D. H. McNairy *et al. v.* The Mayor and City Council of Nashville.

D. H. McNairy *et al. v.* The Mayor and City
Council of Nashville.

1. DEMURRER IN CHANCERY. *Effect of overruling before the Code.*
Before the adoption of the Code, after the overruling of a general demurrer to a bill in equity, the defendant might insist upon the same matters in his answer, there being no appeal from such a decree until the final hearing on the merits.

Cases cited: Dormer *v.* Fortescue, 2 Atkins, 284; Avery *v.* Holland, 2 Tenn., 469; Kirkman & Ellis *v.* Snodgrass, 3 Head, 370.

Code cited: § 4318–19, § 3157.

2. SAME. *Since the Code.* Since the adoption of the Code, and the allowance of an appeal from the ruling of the Chancellor upon a demurrer, the decree of the Supreme Court upon such an appeal, overruling a demurrer and remanding the cause for plea or answer, is conclusive upon that Court, as well as upon the Court below, in the particular case, as to the matters adjudged by the decree.

Cases cited: Jamison *v.* McCoy, 5 Heis., 108; Cooley's Con. Lim., 47.

3. ADJUDICATIONS OF THE SUPREME COURT. *Binding force.* This Court may make adjudications entirely overlooking statutes or decisions governing the case, and while the decisions may not be good authority in another case, nevertheless for that case they are adjudications, and must have full effect as such.

Cases cited: See, to the same effect, Supervisors *v.* Kennicott, 94 U. S., 498, and cases there cited. But see, *contra,* in a suit at law, Bynum *v.* Apperson, 9 Heis., 633; and in a suit in equity, McDonald *v.* Perkins, December term, 1877, at Nashville.

4. CASE IN JUDGMENT. A part of the Tenth Civil District of Davidson County having been added to the city of Nashville, under an Act of the Legislature requiring a preliminary vote of the people of the annexed territory, a bill was filed by about sixty of the citizens thus incorporated, attacking the validity of the proceedings, because of irregularities in the preliminary election; a demurrer to this bill was sustained by the Chancellor, but, on appeal, overruled by the Supreme Court, and the cause

D. H. McNairy *et al. v.* The Mayor and City Council of Nashville.

    remanded, with leave to the complainants to file an amended bill; the bill as amended was answered, proof taken, and, on the final hearing, the Chancellor, *mero motu*, dismissed the bill, because it showed on its face that the incorporation had been completed before the bill was filed, and because the Legislature had legislatively recognized the incorporation before the filing of the bill.

*Held*, that inasmuch as the amended bill only stated more fully the facts of the original bill without changing its substance, and as the former decree of the Supreme Court necessarily determined that there was equity on the face of the bill, the dismissal was erroneous, and *this* although the points on which the Chancellor based his decision were not brought to the attention of the Supreme Court on the first hearing.

---

## FROM DAVIDSON.

---

Appeal from the Chancery Court. DAVID CAMP-BELL, Chancellor.

GUILD, SMITH & GUILD and HAYWOOD & SYMMES for McNairy *et al.*

JOHN LELLYETT for the Mayor and City Council of Nashville.

McFARLAND, J., delivered the opinion of the Court.

The complainants (about sixty in number) filed the original bill in this cause on the 10th of October, 1866. They charge, in substance, that they are residents and property-holders in a portion of the Tenth Civil District of Davidson County, lying near the city of Nashville. That the Mayor and City Council are attempting illegally to extend the laws and authority of the corporation over the territory in which they reside, by levying and col-

lecting taxes, and otherwise; that this authority is claimed by the city authorities, under a law of the State, passed on the 23d of March, 1860, which provides that territory adjoining the city may be included within the corporate limits, in the following manner: Twelve freeholders in the territory proposed to be included, shall sign a petition to the Mayor and City Council, setting forth by metes and bounds the territory proposed to be added.    If the Mayor and City Council and a majority of the citizens who are freeholders consent, the territory shall become a part of the city of Nashville.    The Act provides that to test the sense of the citizens who are freeholders, an election shall be held at some convenient public place in the territory, at which each citizen of the territory who is a freeholder shall be a qualified voter.    That the sheriff of the county shall hold the election, give twenty days' notice, appoint judges, clerks, return the result to the city authorities, and if a majority of the voters be in favor of the addition, then the territory shall become part of the city of Nashville.

The bill charges that a petition signed by some twelve citizens was presented under this law, asking that certain territory be added to the city limits, to constitute the Tenth Ward of the city.    That a pretended election was held by the Sheriff on the 7th of April, 1866, and a return made by him, a copy of which is exhibited with the bill.    That the return shows a majority of four in favor of annexation, and

upon this the city authorities proceeded at once to extend their authority over the territory. The bill charges that the election was irregular and void; that the polls were not opened until 11 o'clock; that between the hours of 9 and 11 o'clock a sufficient number of legal voters attended to vote against the annexation to have changed the result. They were informed by the judges, or some one of them, that there would be no election that day; that there was no one to hold the election, and that it would be postponed to some future day; that they retired and did not vote. The bill further charges that a sufficient number of legal votes were rejected to have changed the result; that the polls were closed before 4 o'clock, thereby excluding a sufficient number of legal voters to have changed the result. Many other grounds were assumed in the bill against the validity of the annexation, which we need not now notice.

This bill was presented to a Circuit Judge for a fiat for an injunction, which was refused; and the Chancellor also refused, upon the ground that he was precluded by the action of the Circuit Judge. The bill was filed, however, and the Chancellor sustained a demurrer taken by the defendants and dismissed the bill, and from this decree the complainants appealed, and the cause was heard by this Court at its December term, 1869, when the decree of the Chancellor was reversed, the demurrer overruled, and the cause remanded, with leave to defendants to an-

swer, and leave to complainants to file an amended bill, and an injunction was awarded, subject to the future action of the Chancellor, as in other cases.

After the cause was remanded, on the 7th of May, 1869, an amended bill was filed. An answer to both bills was filed, embracing a demurrer to the amended bill.

A motion was made before the Special Chancellor presiding, to dissolve the injunction, and thereupon, of his own motion, he dismissed both bills, and the complainants have again appealed to this Court.

The bills were dismissed upon the ground that it appeared from their faces, that no relief could in any event be granted. The reasons leading the Chancellor to this result were mainly, that it appeared that the annexation of the Tenth Ward was fully accomplished and the organization fully completed before the bill was filed, and the Court has no jurisdiction to disorganize any ward of the city; and secondly, that after the election in question an Act was passed on the 24th of May, 1866, by the Legislature of the State, in which the Tenth Ward is fully recognized as part of the city. The cause was not heard upon the answer and proof, but the action of the Chancellor was predicated alone upon the face of the bill. We have, therefore, not looked either to the answer or proof in the Record.

Many interesting questions raised by the bill have been argued with learning and ability. We are met, however, at the threshold of the case with a question

that must be disposed of, before the other questions can be reached, and that is, as to the effect of the former decree of this Court.

For the complainant it is argued that this decree adjudges the very questions upon which the Chancellor afterwards dismissed the bill, and the matters thus adjudged could not be re-examined by the Chancellor, nor can they now be examined by this Court. It is not denied that this is the result, provided the former decree of this Court is to be taken as an adjudication of the questions involved; but it is argued that this decree does not adjudge the questions decided by the Special Chancellor: 1st. Because the decree was confined alone to the questions raised by the demurrer, and did not preclude the Chancellor from afterwards dismissing the bill of his own motion, upon other questions not raised by the demurrer; and, 2d. Because the decree of a Court of Chancery, overruling a demurrer, decides nothing except that the defendant must answer; that the Court is not thereby precluded from again examining the bill upon the points raised by the demurrer; that in this respect it differs from a demurrer at law. We will examine the last proposition first.

It was held by Lord Hardwick, in *Dormer* v. *Fortescue*, 2 Atkins, 284, that after the demurrer was overruled the defendant might insist upon the same matter in his answer; and in *Avery* v. *Holland*, 2 Tenn., 71, this Court held in substance the same. The effect of legislation subsequent to this decision

has somewhat changed the reasons upon which this holding is predicated. All demurrers for form have been abolished, and demurrers must state the objection relied upon, or in other words must be special. Code, § 2934; *Kirkman & Ellis* v. *Snodgrass,* 3 Head, 370. Objections to the jurisdiction of the Court must be taken by plea or demurrer, and a filing of answer is a waiver of the jurisdiction of the Court, and the cause shall not be dismissed, but heard upon its merits, although the Court may be of opinion that the matters complained of are of legal cognizance. Code, § 4318, 4319; 3 Head, 372.

Appeals may, in the discretion of the Chancellor, be allowed from decrees settling principles and ordering an account, or upon overruling a demurrer. Code, § 3157.

The general object and tendency of these laws are to have all preliminary questions adjudged in advance, and not leave parties to incur the expense and delay of preparing a cause for trial, to be informed in the end that they are in the wrong Court, or that the trouble and expense of proving the facts of their case was unnecessary, for the reason that they were not in any event entitled to relief. If it be that the facts stated in a bill taken to be true do not entitle the complainants to any relief, it would certainly be better to decide this at once, and save the trouble and expense of a contest over facts that the Courts regard as wholly immaterial. A demurrer is

17—vol. 2.

the proper mode to have such questions adjudged, and the object of a special demurrer is to call the attention of the Court to the direct question to be decided. A decree overruling a demurrer probably may not adjudge questions not raised by the demurrer, but which might have been good ground. But the converse of this seems to follow, that the decree does adjudge those questions directly raised by the demurrer.

The object of allowing an appeal from a decree overruling a demurrer is that the Supreme Court may determine in advance the questions thus raised, but if its decree adjudges nothing unless the demurrer be sustained, it would be of little practical advantage to allow the appeal. The decision would amount to nothing unless the decision be for the defendant and the bill be dismissed.

The question came before this Court at the April term, 1871, at Jackson, in the case of *C. R. Jamison, adm'r,* v. *James McCoy.* A negro man by the name of Cæsar had purchased his own and his wife's freedom from their owner (one Ward), but the consent of the State had not been obtained to their formal manumission under the laws passed upon that subject. At the request of Cæsar, a bill of sale was made conveying him to one Warren, as trustee or guardian. McCoy afterwards induced Cæsar to have the bill of sale made to him, which was done under many promises made by McCoy. McCoy, in fraud

of Cæsar's rights, reduced him and his wife to a state of slavery and sold them both to one Vaughan for $500, by whom they were sold to other parties, and afterwards to Jamison, in Mississippi, who held them for a time, but becoming satisfied at the truth of their statements, set them at liberty.    After the death of Cæsar and his wife, Jamison took out letters of administration upon the estate of Cæsar, in Dyer County, and filed the bill against McCoy, to hold him responsible for the property of Cæsar, taken by him, for the $500 for which he and his wife were sold to Vaughan, and for the value of their services.    McCoy filed a demurrer upon the following grounds:

1. The bill did not show that the County Court of Dyer County had jurisdiction to grant letters of administration upon Cæsar's estate.

2. The bill shows that Cæsar bought his freedom of Ward (his former owner), and this contract was in violation of law and void.

3. It seeks to recover his wages and asks the price which they sold for, which could not be allowed —his purchase did not invest him with freedom or enable him to maintain an action.    The Chancellor overruled the demurrer, but allowed an appeal.    The cause was heard by this Court at the Special Term, 1868, and the decree of the Chancellor overruling affirmed, and the cause remanded for plea or answer. The bill was answered, an account taken, exceptions taken and acted upon, and a decree for complainant

for about $2,000, including the $500 (the price of Cæsar and. his wife), their hire and the value of his property. McCoy again appealed.

The exceptions were that Cæsar was a slave, and could not hold property; that the action was barred by the Statute of Limitations, and that the $500 for which he and his wife sold should not be allowed.

Judge Nicholson, delivering the opinion of the Court, said: " The first question raised in the argument is, whether the judgment of this Court at its April term, 1868, overruling the defendant's demurrer and remanding the cause for plea or answer, is conclusive upon this Court as to the matters adjudged by that decree. The answer to this question depends upon the settlement of another question, whether the decree at the April term was an interlocutory or final decree. In general an appeal to this Court lies only from final judgments or decrees, but by special statute several exceptions to this rule are provided for, and among them is discretion given to Chancellors to allow appeals from decrees overruling demurrers. The object of this exception to the general rule is obvious. It is intended to save parties the trouble and expense of going through a long course of litigation before having it finally determined whether upon the face of the bill the Court has the jurisdiction to grant the relief prayed for.

The sole object, therefore, of such an appeal is to obtain the final adjudication of the questions raised

by the demurrer.   If the decree in such case be not final, then nothing is accomplished by the appeal. We hold, therefore, that the decree rendered by this Court at its April term, 1868, was final and conclusive as to the matters passed upon, and that it is as binding upon this Court as it was on the Chancery Court.   All the legitimate consequences of the doctrine of *res adjudicata* belong to that decree."

The only distinction between that case and the present upon this question is; that in that case the Chancellor had in the first instance overruled the demurrer, while in this case the Chancellor sustained the demurrer, but this certainly can not change the principle.

It was held in that case that the decree overruling the point raised by the demurrer, that the bill did not show that the County Court of Dyer had jurisdiction to grant letters of administration, necessarily decided that Cæsar could hold property, for without this there could have been no administration.   In support of this decision Judge Nicholson cites *Dewey* v. *Gray,* from the Supreme Court of California, Cooley's Constitutional Limitations, 47.   It was held in that case that the question as to the complainant's rights to recover the $500 for which Cæsar and his wife sold was conclusively adjudged by the decree overruling the demurrer.

We are content to follow this case, and hold that the decree of this Court at the December term, 1869, in the present case, is conclusive as to all matters

adjudged by that decree. And we now proceed to inquire what matters were raised by the demurrer and adjudged by that decree.

We do not deem it necessary to set forth more fully than we have done the allegations of the bill. The cause of demurrer, among other things, is: "That the said complainants have not by their said bill made out such a case as entitles them in a Court of Equity to any relief as against these defendants as to the matters contained in said bill, or any such matters, and for more specific causes shows:

1. That the consent of the complainants was not necessary to be obtained to incorporate the territory, and their rights were therefore not infringed.

2. That the law referred to in the bill is a constitutional law.

3. That the proceedings had, as set forth by the bill, under the law as therein set forth, were all regular, lawful and valid, fully complying with the conditions of the law, and the territory in question thereby became a part of the city.

4. That the Act of 1860 was not special; that the Legislature had the power to make the addition without the consent of complainants.

5. That the bill shows that a majority of the voters were not opposed to the annexation; and

6. That the remedy was at law.

The decree of this Court in overruling this demurrer sets forth in brief the allegations of the bill in regard to the election, overrules the demurrer and

remands the cause for answer, and at the same time awards an injunction.

What does this decree adjudge? Did it preclude the Chancellor from dismissing the bill of his own motion for want of equity upon its face. If the amended bill, taken as part of the original bill, should present a different case, a different state of facts, then the Chancellor could take action upon the new cases; but the amended bill does but little more than present the irregularities of the election more in detail. It does not change the complainants' case, so far as it went in the original bill, it makes additional questions upon the irregularity of the election. Were the questions upon which the Special Chancellor acted, or which have been urged in argument here in support of his action, adjudged by the decree in question?

1. It is argued that the Chancellor's action should be sustained upon the grounds that the territory in question had become part of the corporation of Nashville, and organized as such before the bill was filed, and that after this no relief could be granted.

That the Court's attention was not called to this by the demurrer upon which the former decree was rendered. The fact that the territory had been organized as a ward of the city distinctly appears by the allegations of the original bill. The demurrer does not set forth this precise argument, but it does distinctly make the question that by virtue of these proceedings, under the law, the territory had become

part of the city.     It is ·not necessary to show that
the Court's attention was called to every argument or
authority that might be used for or against a given
conclusion, to make their decision an adjudication of
the question.

2. · It is argued that the Chancellor's action is cor-
rect, upon the grounds that whatever ·be the effect of
the proceedings set forth in the bill in regard to the
election, yet the territory is recognized as part of the
city by the Act. of May, 1866, before referred to.
This Act was passed before the filing of the bill, and
the decree of this Court and its effect was necessarily
determined by the decree in question.     The attention
of the Court may never, in point of fact, have been
called to the fact.     This Court may make adjudica-
tions entirely overlooking statutes or decisions govern-
ing the case, and while the decision may not be good
authority in another case, nevertheless for that case
they are adjudications, and must have full effect ·as
such.

The demurrer makes the direct question that the
Legislature had the power to add the territory to the
city limits without the consent of the complainants.
Whether the Legislature had done so or not was nec-
essarily involved in this.

Again, it is argued that no provision is made for
contesting the election; that the returns of the sheriff .
is conclusive; that the remedy was not with the
Courts, but with the Legislature; that the complain-
ants have not the right to maintain this bill; that

this relief could only be granted at the instance of the State.

We are of opinion that the decree of this Court before referred to, necessarily adjudges that assuming the facts stated in the original bill to be true, under the law in force and applicable to the case, that the city authorities of Nashville had no right to enforce their municipal authority and laws over the territory in question, and that the complainants, in the present form of action, are entitled to have relief by injunction against the Mayor and City Council. We are unable to give any other construction to the decree consistent with what we regard as sound principle. This being so, the decree of the Chancellor was erroneous.

We express no opinion upon the other questions argued. We think that for this case at least they are *res adjudicata,* and therefore have not examined them.

As to the consequences and inconveniences that may result either way from this decree, we have nothing to do. We must simply declare the law as we understand it.

The decree must be reversed and the cause remanded.