## H. L. TERRELL *v.* H. H. INGERSOLL *et al.*

1. **CHANCERY PLEADINGS AND PRACTICE.** *Appeal.* A decree which merely orders an account without settling the principles on which the account shall be taken, or which while settling some of the principles expressly reserves others for further consideration, is not such a decree as will authorize an appeal, by leave of the court, under the Code, sec. 3157. It is otherwise if the decree purport to settle the principles, although it fail to settle them all.

2. **SAME.** *Stating an account.* A general reference to the master to take and state an account without settling the principles on which the account should be taken is improper, and if the facts are not before the court to enable the judge to settle the principles, he should declare the general right, and give time to the parties to take the necessary proof.

3. **DAMAGES.** *Writ of injunction.* The party who wrongfully sues out a writ of injunction is liable in damages to the opposite party for all the injury or loss which is the proximate result, and must be held to active diligence in the conduct of all proceedings under it.

4. **PARTNERS.** *Receiver.* A partner, who enjoins his co-partner from collecting partnership assets is bound to see that a receiver is promptly appointed to take charge of the effects impounded by the writ, and to secure them by proper legal proceedings; he is liable for all loss occasioned by the neglect of the receiver to do his duty, whether in realizing assets, or in accounting for them after they are realized, and the fact that his adversary consents to the appointment of a particular person as receiver will not change the rule; but it will be otherwise as to any loss occasioned by the insolvency of a receiver, if the adversary has consented to his appointment without giving security.

5. **SAME.** *Damages. Limitations.* Where one partner has been enjoined from collecting partnership assets wrongfully, he will be entitled to recover on the injunction bond as damages his share of the solvent assets at the suing out of the injunction, which became insolvent, or barred by the statutes of limitation before the dissolution of the injunction.

6. LIMITATION. *Statute of.* The Code, sec. 2756, which provides that when the commencement of an action is stayed by injunction, the time of the continuance of the injunction is not to be counted, only applies between the parties to the writ, and does not prevent the running of the statute of limitations in favor of third persons.

### FROM GREENE.

Appeal from the Chancery Court at Greeneville. E. C. REEVES, Sp. Ch.

TEMPLETON and McKEE for complainant.

KIRKPATRICK and BARTON for defendants.

COOPER, J., delivered the opinion of the court.

Terrell, Ingersoll and Britton were partners in the practice of the law. The firm dissolved, and Terrell removed from the State. Some differences arising as to the division of fees between Terrell and Ingersoll, they agreed to submit the matters in dispute to arbitrators, who awarded that complainant should have one third of the matured or finished business, and one third of all fees settled, that is, paid or closed by note, collateral security or otherwise, not including unsettled accounts for unfinished business, which were awarded to Ingersoll. On October 24, 1870, the original bill was filed by Terrell against Ingersoll and Britton for the purpose of having the award set aside, and for a partnership account. The complainant prayed and obtained an injunction, enjoining the defendants " from collecting or receiving any monies on the notes, accounts, etc., belonging to or in any way connected

with the business of the partnership." In conformity with the order of the judge granting the *fiat* for the injunction, the complainant entered into bond, with two sureties, conditioned to pay all costs and damages which might accrue for wrongfully suing out the injunction.

The bill also asked for the appointment of a receiver to take possession of, and collect the partnership assets, and at the November term, 1870, of the court the chancellor granted the prayer for a receiver by the appointment of A. B. Wilson. By the order of appointment, the parties were required to surrender to the receiver all books, notes and accounts of the partnership business in their possession, and the receiver was directed to proceed to collect all debts, notes and accounts received from the parties, and to make due return of his action to the court. On November 18, 1871, an order was made showing that Wilson was permitted to resign, and that "on application" the court appointed W. F. Green receiver, with the powers given, and duties imposed by former decrees, and with authority to proceed at once to the collection of the notes and accounts, "and, if necessary, to put out the same for collection by suit." On May 16, 1873, Green was permitted to resign, and, "on application, and by consent of parties," the court appointed A. B. Ingersoll receiver, with the powers heretofore granted. On May 15, 1874, an order was made reciting that Ingersoll had not given bond as required, and that the court "on application of the parties," is pleased to appoint J. M. Brabson receiver, to be governed by the orders heretofore made. On May 14, 1875, an order is

made, without any preliminary recital, as follows: "By consent of parties in open court, E. C. Reeves, Esq., an attorney of the court, is appointed receiver in this case, and bond waived, and he is fully authorized to proceed to collect any and all funds due the said firm of Britton, Terrell and Ingersoll, and the former orders as to the receivers, giving them power and directions, etc., are hereby revived for his guidance."

Such proceedings were had in the cause that by a decree of this court the award of the arbitrators was sustained, and the bill dismissed so far as it sought to set the award aside, and the cause remanded to the chancery court for the taking of an account between the parties on the basis of the award. On November 24, 1877, a decree was rendered by the chancellor, upon the remand and decree of this court, ordering the account. By the same decree, the chancellor dissolved the injunction "so far as it affects the claims in which complainant has no interest according to the terms of the award," and made a reference to the master to hear proof, and ascertain what if any damages had been sustained by the defendant by reason of the wrongful suing out of the injunction, and make report. On May 19, 1880, a balance of indebtedness having been found against the complainant upon the partnership account, the chancellor dissolved the injunction altogether, and the defendant Ingersoll again moved for a reference to ascertain the damages sustained by reason of the injunction. On July 29, 1880, this motion was heard, and the court made the reference, being of opinion that complainant and his sureties on the in-

junction bond were liable for all damages "naturally and actually" resulting to defendant from the wrongfully suing out the injunction, and that they would be liable for the loss, if any, resulting from the negligence of the receivers to sue upon and collect claims, but reserving the question by whom the loss, if any, should be borne, which may have resulted after collection to the fund collected by the receivers.

The master made a report upon the references as to the damages sustained by reason of the injunction, to which both parties filed exceptions. On May 15, 1882, the report and exceptions were heard by the chancellor, who undertook, for the first time, to settle the principles upon which the damages should. be allowed. His Honor was of opinion that the result of these principles was to require a recasting of the entire account, and he recommitted the cause to the master to hear further proof, and make a new report upon the basis of the special instructions then given by him. These instructions were to take the interest of the defendant in the claims which were solvent on October 24, 1870, when the injunction was sued out, and to allow defendant his share of such solvent claims, where the debtors became insolvent while the injunction was in force, with interest from the time they respectively fell due; to allow defendant also his share of such claims on debtors who died pending the injunction, and whose estates were protected by the statute of two-and-a-half years before the dissolution of the injunction, with like interest; and to allow the defendant his share of such claims upon which suits may

have been brought, and the defense of the statute of limitations may have been effectually made. These instructions, the decree provided, were to be in addition to those already given in former decrees. The former instructions, as we have seen, were that the complainant and his sureties were liable for the damages "naturally and actually" resulting to the defendant from the injunction, and for the loss, if any, resulting from the negligence of the receivers to sue upon and collect claims. The chancellor did not determine the question reserved by the former decree, namely, by whom should be borne the loss, if any, of funds after they were collected by the receivers. From this decree, the defendant, by leave of the court, appealed to this court.

The rule in this State always has been that an appeal, as a matter of right, lies only from a final decree: *Joslyn* v. *Sappington*, 1 Tenn., 222; *Morris* v. *Richardson*, 11 Hum., 389; *Delap* v. *Hunter*, 1 Sneed, 101; *Abbott* v. *Fagg*, 1 Heis., 742; *Harrison* v. *Farnesworth*, 1 Heis., 751. But, by the Code, sec. 3157, the trial judge may allow an appeal in equity causes from his decree determining the principles involved, and ordering an account. A decree which simply orders an account, without settling the rights of the parties, or the principles on which the account should be taken, is not such a decree as will authorize an appeal under that section: *Meadows* v. *State*, 7 Cold., 416; *Brandon* v. *Crouch*, 11 Heis., 605. Such a general reference is seriously objectionable because it leaves the master without any guide, and compels him to

Terrell *v.* Ingersoll.

decide the law, as well as to ascertain the facts necessary to a proper statement of the account: *Cobb* v. *Jameson,* 1 Tenn. Ch., 604.    In his first order of reference in the case before us, the chancellor determined nothing.    In the order of July 29, 1880, he did hold that the complainant and his sureties would be liable for any loss resulting from the negligence of the receivers to sue upon and collect the claims placed in their hands, but he expressly reserved the question whether they would be liable for any loss of funds after they had been collected by the receivers.    The decree was not one, therefore, settling the principles of the account.    The decree of May 15, 1882, was the first which undertook to settle principles, and from which alone an appeal could have been taken by leave of the court under the Code, sec. 3157.    The omission of any allusion to the question reserved by the former decree may have been by oversight, or because the chancellor did not think it was raised by the facts submitted to him.    Such an omission would not affect the right of appeal, the decree purporting to settle the principles of the account.

It may be remarked that the court below can scarcely be blamed for failing to settle the principles of an account, when there is not sufficient proof before him to raise the questions, or show what damages are claimed.    In such case, the proper practice would be to declare that the party is entitled to such damages as he may have sustained, and give the parties time to take their proof.    So much of it may then be submitted to him as may be necessary to enable

him to settle the principles, leaving the details of the account to be made out by the master.

The contest in this case is over that part of the chancellor's decree which relates to the general statute of limitations of six years in favor of debtors in actions on notes and accounts. His Honor was of opinion that before the defendant Ingersoll, upon the reference, could charge the complainant with claims on parties who were solvent at the date of the dissolution of the injunction, he must first sue upon such claims, and show that suits have been successfully defended by the defenses of the statute. He places his ruling upon the ground that the defense is personal to the debtor, and may not be relied on, and the bar cannot be said to attach until it is actually pleaded.

His Honor is upon this point clearly in error, for the obvious reason that the right of the defendant to damages accrues upon the dissolution of the injunction, and the motion or action therefor on the bond cannot be made to await the result of suits subsequently brought to test the question whether the debtors will rely upon the statute: High on Inj., sec. 956. Besides, this court has said that the obligation of a debt, the remedy on which is barred by the statute of limitations, cannot be said to be subsisting and legal. Its payment is not compulsory on the party in whose favor the bar has attached. It is idle to talk of a debt where there is no legal obligation to pay it: *Cocke* v. *Hoffman*, 5 Lea, 109. It would certainly not be equitable to require an injured party to go to the trouble and expense of instituting suits upon barred

claims for the benefit of a partner by whose improvident act the bar was allowed to attach. The latter can have all the benefit to which he is justly entitled by being subrogated to the rights of the partnership in the claims.

It is insisted by the complainant's counsel that the claims were not barred by the statute of limitations at the dissolution of the injunction, because the statute was suspended during its continuance. He relies, in support of this view, upon the Code, sec. 2756: "When the commencement of an action is stayed by injunction, the time of the continuance of the injunction is not to be counted." The language of this section is general, and in that respect gives some color of aid to the position assumed. But the writ of injunction acts in *personam*, and is only operative between, and for the benefit of the parties to the suit in which it is sued out: *Greenwald* v. *Roberts*, 4 Heisk., 494; *Wilhoit* v. *Castell*, 3 Baxt., 419; High on Inj., sec. 1. It cannot be supposed that the Legislature intended to affect the rights of persons not parties to the litigation in which the writ issued, nor having any notice of the writ itself. The generality of the language of a statute is always controlled to some extent by the subject matter in relation to which it was passed, and by the object of the Legislature in passing it.

The plaintiff in an action who wrongfully sues out a writ of injunction is liable for all the injury which proximately results from it, and must be held to active diligence in the conduct of all proceedings under it. It is his duty to see that a receiver is appointed

to take charge of property and effects impounded by
the writ, and to secure them by proper legal proceed-
ings which his adversary is prevented by the writ
from instituting. *Prima facie*, the complainant is lia-
ble for all losses occasioned by the neglect of the
receiver to perform his duty, whether it be in real-
izing the asset, or in accounting for it after it is
realized. He can shift the burden upon his adversary
only by showing that the loss was occasioned by him.
The fact that the adversary consents to the appoint-
ment of a particular individual as receiver will not
change the result, for the receiver is equally the choice
of the complainant, and the duty of active diligence
still attaches to the latter. It would be otherwise,
however, if the defendant agreed to the waiver of se-
curity by the receiver, and the loss occurred by reason
of the insolvency of the receiver. For to that extent
he would be as much in fault as the complainant.
But the active diligence which the law imposes upon
the party who sues out the writ of injunction cannot
be released by the mere negligence of the opposite
party. The latter can only be made responsible by
actual interference or participation in the act which
occasions the loss.

The decree of the chancellor will be modified so
as to allow to the defendant Ingersoll his share of
claims which were solvent at the suing out of the in-
junction, and the right of action on which was barred
by the statute of limitations before the injunction as
to the particular claim was dissolved; and his share
of any funds lost after they were collected by the

receivers, except funds, if any, lost by the insolvency of the last receiver. With these modifications, the decree of the chancellor will be affirmed, and the cause remanded for the purpose of taking the account. The complainant will pay the costs of this court. The costs below will be paid as ordered by the chancellor.