𝔖𝔱𝔞𝔲𝔫𝔱𝔬𝔫.

CITIZENS NATIONAL BANK OF CHARLOTTESVILLE V. MANONI
ET ALS.

October 16, 1882.

1. PRINCIPAL AND SURETY—*Constructive notice—Laches—Release of surety—
   Case at bar.*—Creditor company buys of its debtor property, in part
   payment delivers to him the note which is the evidence of the debt, and
   for balance pays him the cash. It turned out there were on the pro-
   perty docketed liens, and it was sold to pay them. Of those liens the
   company had constructive notice, and but for the grossest laches, might
   have had actual knowledge.

HELD:

   The company cannot be allowed to contend that the note was deliv-
      ered up under mistake and remains unpaid, and for its payment
      pursue the surety, or the property of the surety, which had been
      conveyed in trust to secure payment of the note.

2. REGISTRATION—*Notice.*—Under the Code of this State the regular
   docketing of judgments gives constructive, but in law conclusive notice
   thereof to all the world.

3. JUDICIAL SALES—*Costs—Fees of counsel.*—When property is sold under
   decree of court to satisfy liens thereon, out of the proceeds must be paid
   the taxed costs, but not more than the legal fee to the plaintiff's counsel.
   If an allowance beyond the usual fee, for counsel representing the credi-
   tors, be proper, and it be paid out of the proceeds, it should be credited
   ratably on the liens, so as not to tax the debtor with it.

Appeal of the Citizens National Bank of Charlottes-
ville from the decrees of circuit court of Albemarle
county, pronounced in the suit in chancery wherein Friend
& Price and other lien creditors of John Manoni were
complainants, and John Manoni, Andrea Manoni, and
Marie C., his wife, the Virginia Loan and Trust Company,
the Citizens National Bank of Charlottesville and others,

were defendants; in which suit the said Citizens National Bank filed its cross bill against the remaining parties, both plaintiff and defendant.

The object of the original bill was to enforce certain duly docketed judgment liens on the real estate of John Manoni, which had been conveyed by him, after the docketing thereof, to the Virginia Loan and Trust Company, to whose rights and liabilities the said national bank succeeded.

The opinion of the court states fully the object of the Citizens National Bank, as set forth in its cross-bill, together with all the facts essential to the understanding of the points decided.

*A. R. Blakey,* for the appellant.

*Watson & Perkins* and *Mason Gordon,* for the appellees.

BURKS, J., delivered the opinion of the court.

Andrea Manoni and John Manoni, brothers, were partners in business at Charlottesville. John, it seems, was not known to the public as a partner. The business of the firm was conducted in the name of Andrea Manoni alone, and in his name the partners held title to their property, among which was a town building divided by a passage, the one part known as the Eastern half and the other as the Western.

In March, 1867, Andrea Manoni made a negotiable note for $1,000, payable, at twelve months, to the order of his brother John, and gave a deed of trust on the building mentioned to secure its payment. John endorsed it to the Virginia Loan and Trust Company, who discounted it and paid the proceeds to him.

After this, the brothers divided their joint property between them by deed duly executed and recorded, or rather Andrea sold and conveyed his interest to John—the price $4,000, and a further sum due the concern, which he retained, and John undertook to pay all the partnership debts. This was expressed, and a lien also reserved in the deed. Subsequently, and not long thereafter, this arrangement was modified to this extent. Andrea released the $4,000, and took from his brother, in consideration of the release, a conveyance of the Western half of the building before referred to. This seems to have been the only modification of the first arrangement or partition. This deed was also recorded. About a month after this, John Manoni, who was then, under the deeds mentioned, sole owner of the Eastern half of the building, sold it to the Loan and Trust Company at the price of $3,500, and conveyed it to the company by deed with the usual covenants for good title, &c. The company then surrendered to him the note it held of $1,000 in part payment of the property bought, retained $400 to indemnify itself against loss for alleged breach of a covenant as to some right or privilege granted by the deed, and paid to him the residue of the purchase money, in amount about $2,000.

It turned out that there were a number of unpaid judgments against John Manoni, which had been recovered and docketed some time before the sale to the Loan and Trust Company, and therefore bound the property conveyed to it. The aggregate of the judgments (less war interest abated) at the time of the purchase by the company was about $1,466. The creditors filed their bill to enforce the liens of their judgments against the property sold to the company and other real estate supposed to be owned by John Manoni, but, on investigation, it appeared there was little or no property available except that conveyed to the Loan and Trust Company.

The Citizens National Bank of Charlottesville, which had succeeded to the property and rights of the Virginia Loan and Trust Company, intervened, and while not seriously controverting the rights of the judgment creditors, claimed that although the note for $1,000 had been surrendered as before stated, yet it had never been really paid—that it was surrendered under a mistaken idea that the company had acquired good title to the property bought, when, in fact, by reason of the unsatisfied judgments, and to the extent thereof, the title was defective—and as the amount of the judgments exceeded the amount, principal and interest, of the note, the bank, claiming under the Loan and Trust Company, had the right to enforce the deed of trust before alluded to, and which had never been released, against the Western half of the building, which had been conveyed by John Manoni to Andrea, the whole building being covered by the trust deed.

The court decided against the claim of the bank, holding that the note of $1,000 had been paid, the trust deed satisfied, and that neither Andrea Manoni nor his property was bound for the debt.

The bank was also required to pay up the $400, which had been retained by the Loan and Trust Company, principal and interest, a part of which was applied to costs and charges of the suit and the residue to the judgments. The Eastern half of the building was also sold to raise the amount lacking to satisfy the judgments.

The bank as appellant here insists that the circuit court erred in holding that the note of $1,000 is paid and the deed of trust satisfied, and in denying the relief prayed.

We are of opinion that the decree on this the main point in controversy, is right.

The debt in question was the debt of John Manoni. When the note was discounted, the proceeds were paid to him. He got the whole benefit. The Loan and Trust Com-

pany dealt with him as primary debtor in surrendering to him the note as paid out of the purchase money of his own land.

If, in its inception, it was the debt of the firm, as contended for the appellant, the property of the firm having been pledged to secure it, it subsequently became the debt of John Manoni, under the arrangement he had with his brother Andrea, by which he undertook to pay all the debts of the firm. By this arrangement, as between themselves, John became principal debtor, and Andrea his surety, for the social debts. Of this agreement, the Loan and Trust Company had notice when they surrendered the note to John and paid him the residue of the purchase money, less the $400 retained. We say the company had notice, for the agreement is stated in the recorded deed from Andrea to John, referred to in the subsequent deeds. Indeed, we do not understand that the company or the bank at first denied the notice.

The case, then, stands thus : The Virginia Loan and Trust Company held the note of Andrea Manoni, endorsed by John Manoni, in which the latter, though endorser, was the principal debtor and the former his surety. Of this relation the Loan and Trust Company had notice. The property conveyed to secure the debt was partnership property. This may not have been known when the note was discounted and the security accepted, but the company had notice of it when the note was surrendered, for the partition deeds were then on record, and from the last of these it also had notice that the partnership house covered by the trust deed had been divided, Andrea getting in the division the Western half, and John the Eastern, which he sold and conveyed to the company. As it was John Manoni's debt, of course his half of the property was primarily bound for its payment, and Andrea, the surety, had the right in equity to require the Loan and Trust Company

to resort to this moiety for his exoneration before coming upon his own.

John Manoni's half was more than sufficient to pay not only the amount of the note and accrued interest, but all the judgment liens upon it, and these judgments were against him alone and for his own individual debts. If the purchase money owing by the company had been applied to the encumbrances, all of them would have been discharged and eight hundred dollars left. And yet the company, instead of paying off the judgments, actually paid over the money, upwards of $2,000, to John Manoni.

With what face can the company, or its assignee, claim that Andrea Manoni, the surety, shall be held liable for this note, when the company had the principal's money in its own hands, the proceeds of the property pledged for the debt, which were so misapplied by it as to leave the debt, according to the pretension, unpaid? It is idle to talk of want of notice of the judgment liens. The judgments were duly docketed, and this registration gave notice, constructive, it is true, but in law conclusive; and nothing but the grossest negligence prevented actual knowledge. If the slightest diligence had been used—if the judgment docket had been examined, as it should have been—notice in law would have been followed by knowledge in fact. The consequences of *laches* so gross may not be visited on an innocent surety.

The complaint that the $400 (which had been retained by the company), with the accrued interest, was required to be paid, appears to be utterly groundless. When paid, if properly applied, it would have reduced *pro tanto* the liens on the property, which, as the result of the sale shows, is more than sufficient to discharge all the judgments.

But there seems to be some ground for the complaint that this money, in part at least, was not properly applied. The court directed that out of it the costs of the suit, in-

cluding an attorney's fee of $100 to *plaintiff's* counsel, should be first paid, and the residue applied to the judgments.

The taxed costs were properly ordered to be paid out of the fund, but we can see no good reason why the debtor should be required to pay more than the legal fee to plaintiff's counsel. If it be proper that the counsel representing the creditors should have an allowance beyond the legal fee for their services, the creditors should pay it, and if paid out of the fund, it should be credited ratably on the judgments, so as not to tax the debtor with it.

As the bulk of the fund under the control of the court remains for distribution, the proper abatement of the judgments may be made when the case goes back to the circuit court.

With this qualification, we think the decrees should be affirmed.

DECREE AMENDED AND AFFIRMED.