KELLY v. MOUNTAIN CITY CLUB.

(*Knoxville.* October 1, 1898.)

ATTORNEY FEES. *Not paid out of general fund, when.*

The solicitors of complainant in a bill to wind up the affairs of an insolvent corporation are not entitled to have their fees paid out of proceeds of real property to the detriment of first mortgage bondholders, notwithstanding that the proceeds of such property was paid into Court during the progress of the case, it appearing that the first mortgage bondholders, as such, were not interested in having the proceeds go into Court, although one of their number, who was also interested as a second mortgage bondholder and as a general creditor, consented that the suit be treated as a general creditors' bill.

Cases cited and approved: Garner v. Garner, 1 Lea, 30; Hume v. Bank, 13 Lea, 496; Keith v. Fitzhugh, 15 Lea, 49.

---

FROM HAMILTON.

---

Appeal from Chancery Court of Hamilton County. T. M. McCONNELL, Ch.

WILLIAMS & LANCASTER and COOKE, SWANEY & COOKE for Kelly.

STEPHEN & CARSWELL and WHITE & MARTIN for first mortgage bondholders.

WILKES, J. The only question in this case is whether the fees of complainants' solicitors are payable

Kelly v. Mountain City Club.

out of the proceeds realized from a sale of the real property of the Mountain City Club, a social organization, wound up in this proceeding as an insolvent corporation. There is no contest as to the amount of the fees. They were fixed at $850, and the Court below held that no part of the amount should be charged up against the real estate of the club, or its proceeds, and the complainants appealed. The Court of Chancery Appeals affirmed the decree of the Court below, and held that no part of the fees should be paid out of the real estate. It appears that upon this real estate there is a first mortgage for $25,000. There is a mortgage for $10,000 upon the furnishings, etc., of the club, and this is also a second mortgage on the realty. Complainant, Kelly, is a holder of some of the latter bonds, and is also a general unsecured creditor of the club to a large amount.

The bill in this cause was filed to wind up the affairs of the club, alleging insolvency and setting out the assets and liabilities, and it was asked that it be taken and treated as a general creditors' bill and that a temporary receiver be appointed.

To this bill the club, as a corporation, and the Southern Bank & Trust Co., as trustee, and one Squair, were made defendants. Squair was a holder of some of the first mortgage and some of the second mortgage bonds. The club answered, admitting insolvency and agreeing to the proceeding.

On February 15, 1896, Bray and others, holders

of first mortgage bonds on the real estate, filed a cross bill, asking a foreclosure of their mortgage and sale of the real property for their benefit, and that their cross bill be treated as a general creditors' and bondholders' bill, and that a permanent receiver be appointed, etc.

April 26, 1896, Squair, who was a defendant to the original bill, joined with Kelly, complainant in the original bill, in filing an amended and supplemental bill, in which he insisted it was to the interest of all parties to have the affairs of the club wound up under one proceeding, and he asked that the amended and supplemental bill be treated as a general creditor's bill, and that permanent receiver be appointed. This bill at chambers was ordered to be treated as a general creditors' bill, and a permanent receiver was appointed under all the proceedings. The property was sold. The real estate brought $10,500. There are several thousand dollars of other assets. There was a reference as to the fees, reserving the question as to what funds would be liable for them. The amount of fees was reported and is not excepted to. Under the order of reference, much proof was taken to show that complainant's action in the whole matter was in the interest of the club and general creditors, and to the prejudice of the first mortgage bondholders.

Upon final hearing the Chancellor decreed as before stated, and the Court of Chancery Appeals has

Kelly *v.* Mountain City Club.

affirmed his ruling, and the case is before us on appeal of complainants, and errors assigned.

The only error assigned is that the Court of Chancery Appeals erred in holding that no part of complainant's attorneys' fees should be paid out of the proceeds of the real estate sold, inasmuch as the amended and supplemental bill filed by Squair, who was a holder of first mortgage bonds, was ordered by the Court to be treated as a general creditors' bill, and the litigation was conducted on this idea. It is insisted, that, under this bill, the fund of $10,500 was brought into Court as the proceeds of the real estate, and complainant's solicitors are entitled to fees out of it. Several authorities are cited in support of this contention.

We are of opinion the error is not well assigned, and the decree of the Court of Chancery Appeals is correct. It is true the proceeds of the real estate came into Court in the progress of the cause, but not for the benefit of the general creditors. The first mortgage creditors were in nowise interested in having it go into Court. They could have realized it, without the aid of the Court, by a foreclosure outside of Court. The fact that general creditors, or second mortgage bondholders, caused the land to be sold in the case, so that the property might be kept together, was a matter wholly for their benefit, and really to the prejudice and delay of the first mortgage bondholders.

In winding up the affairs of the corporation, so

17 P—19

as to realize whatever of surplus there might be for their debts, the second mortgage bondholders and general creditors would have no right to require the first mortgage bondholders to contribute of their security to pay general creditors and attorney fees. These first mortgage bondholders had their own attorneys, and to them they are responsible for fees. It is evident that the interests of the second mortgage and general creditors were not the same as that of the first mortgage bondholders, but really antagonistic.

The real merits of the case is that the first mortgage bondholders should not be made to contribute to attorney fees to benefit second mortgage bondholders and general creditors when their interests are antagonistic, and informalities, if any, in the proceedings, should not be allowed to work a different result. The fact that Squair was a first mortgage bondholder, and joined in the amended and supplemental bill, can make no difference, since his position was clearly antagonistic to that of the large majority of first mortgage bondholders, and his interest under the second mortgage and as a general creditor may easily account for his position, and places him in antagonism, as it was in this latter capacity that his interests lay. This holding is well supported by authorities. *Garner* v. *Garner*, 1 Lee, 30; *Hume* v. *The Bank*, 13 Lea, 496; *Keith* v. *Fitzhugh*, 15 Lea, 49.

Let the decree be affirmed with costs.