# MOORE et al. v. CHURCHWELL et al.—181 S. W. (2d), 959.

Western Section.   March 22, 1944.

Petition for Certiorari denied by Supreme Court, July 1, 1944.

444

W. P. Moss, of Jackson, for appellants.

Ross & Ross, of Savannah, and Lowell W. Taylor, of Memphis, for appellees.

KETCHUM, J.   This is a general creditors' suit in which the assets of the debtor defendants were impounded, liquidated, and the proceeds thereof distributed under the orders of the court, with the result that the claims of all the creditors were paid in full, and a considerable surplus was left in the hands of the clerk and master belonging to the defendants.   This is an appeal by the defendants from a decree adjudging that the reasonable compensation of complainants' solicitors for filing the bill and impounding the assets, and an allowance of $1000 as extra compensation of the clerk and master, should be taxed as costs and paid out of the surplus fund in the hands of the clerk and master belonging to the defendants, and ordering a reference to the master to hear proof and report as to the amount of the fee to be allowed to complainants' solicitors.   This appeal was granted by the Chancellor in his discretion before the reference was had.   The complainants did not oppose the granting of the appeal at that stage of the proceeding, did not except to the decree, and did not move to dismiss the appeal in this court as premature.   But during the argument here the question was raised by a member of the court whether this was a proper case for the granting of a discretionary appeal under the statute, Code, Sec. 9038, and therefore whether this court had jurisdiction to consider the appeal before the reference was had and the amount of the counsel's fee determined by the final decree, and counsel were requested to submit briefs on this question also, which has been done.

■ Appeals in equity causes, as a matter of right, lie from final decrees only, Code, Sec. 9036; Gibson's Chancery, Sec. 1265; Abbott v. Fagg, 48 Tenn., 742, 748. But in certain cases specified in Code, Sec. 9038 appeals as a matter of favor may be granted by the Chancellor in his discretion from decrees which settle the principles involved, before the entry of the final decree. The instances in which such discretionary appeals may be allowed are the following: (1) decrees ordering an account, or a sale or partition, before the account is taken or the sale or partition is made; (2) decrees overruling a demurrer; and (3) the Chancellor may allow any party to appeal from a decree which settles his right, although the case may not be disposed of as to others.

■ The discretion vested in the Chancellor to grant or refuse an appeal in any of the cases specified in this statute will not be reviewed in the appellate courts except for a clear and flagrant abuse of his discretion. Mr. Gibson in Section 1302 of his Suits in Chancery lays down the rule that "The appellate courts will not reverse a decree on a question of the Chancellor's discretion, unless the exercise of such discretion was not only clearly erroneous, but oppressive."

And our Supreme Court in construing this same statute in Crawford v. Aetna Life Insurance Co., 59 Tenn., 154, said that "Even if it were clear that this court might for the abuse of that discretion, dismiss the appeal, it would require a very gross and palpable case of abuse to call for our interference. This, in our judgment, is not such a case."

■ Nor will the appellate courts place a narrow and technical construction upon this statute in determining whether the decree appealed from falls within the express terms of the statute. It was so held in Morgan v. Layne,

165 Tenn., 513, 518, 56 S. W. (2d), 161, 162, in which an appeal was allowed in the discretion of the Chancellor from a decree overruling a plea to the jurisdiction. The court treated the plea to the jurisdiction "as in effect and substance a demurrer to the jurisdiction", and the appeal was held to have been proper under that clause of the statute authorizing discretionary appeals from decrees overruling demurrers. In that case as in this, the authority of the Chancellor to grant the appeal was not challenged upon the ground that it was premature, and no error was assigned upon that ground in the Supreme Court; and the court, therefore, treated the appeal as having been properly allowed "without ruling on this question, in view of the circumstances and the state of the pleadings."

█ It is the contention of the appellants that the appeal in the present case is proper under the first clause of the statute, the applicable words of which are that "The chancellor . . . may, in his discretion, allow an appeal from his decree in equity causes determining the principles involved and ordering an account."

The decree appealed from certainly determined the principle involved, namely, that the extra compensation of $1000 allowed to the Clerk and Master, and the reasonable compensation of complainants' solicitors for filing the bill and impounding the assets of the defendants for the benefit of their creditors, should be "taxed up as a part of the costs of the cause, which are adjudged against the defendants, and as such paid out of the funds in the hands of the Clerk and Master." And the only remaining question for our consideration is whether the reference to the Master to hear proof and report to the Court as to the reasonable compensation to be allowed to complainants' solicitors may be treated as coming within that

provision of the statute relating to the taking and stating of an account between the parties.

In 1 C. J. S., page 571, it is said that "account" is a generic term, difficult to define, and having various meanings depending somewhat on the surrounding circumstances and connection in which it is used, and among other definitions is the following, approved by the courts of California, Massachusetts, Mississippi, West Virginia and South Dakota: "It implies that one is responsible to another for moneys or other things, either on the score of contract, or of some fiduciary relation, of a public or private nature, created by law, or otherwise." Under this definition we do not think it is unduly extending the meaning of the term as used in this statute to hold that it embraces the order of reference to ascertain and report as to the amount to be allowed to complainants' solicitors as their compensation.

In this connection it is significant that in the many cases in which this provision of this statute have been considered by our appellate courts we have been referred to and have found only two in which the Chancellor's discretion in granting the appeal was reversed, and those reversals were upon the ground that the decrees did not settle the principles involved. One of these cases is Meadows v. State, 47 Tenn., 416, 420, where the court say: "Although it (the decree) orders an account, yet it determines no principle involved. It does not settle or declare the rights or liabilities of any of the parties. In fact, it settles nothing."

And in Terrell v. Ingersoll, 78 Tenn., 77, 82, the court after quoting the language of the statute, say: "A decree which simply orders an account, without settling the rights of the parties, or the principles on which the ac-

count should be taken, is not such a decree as will authorize an appeal under that section''.

And in many of the cases in which appeals have been allowed under the accounting clause of the statute, the reference was not for an accounting of mutual debit and credit items shown by book accounts or otherwise, but included general references to the Master to ascertain the amount due one party or the other according to the principles established by the decree; such, for instance, as the amount of advancements made, the value of personal property, etc., for the purpose of settling an estate; Helms v. Mynatt, 46 Tenn., 215; or to ascertain the reasonable hire of slaves, the rents and profits from real estate, etc.; Allen v. McCullough, 49 Tenn., 174, 5 Am. Rep., 27; the damages allowable for a breach of covenant of title to real estate, including the cost of defending the title, including costs and attorneys' fees; Williams v. Burg, 77 Tenn., 455, 456; and a general reference embracing all matters involved in the settlement of the estate of President Andrew Johnson, including the question of the compensation of Andrew Johnson, Jr.; Matter of Johnson's Estate, 77 Tenn., 625; and a reference in a mechanic's lien case ''for an account and report'' as to the amount due for work done on a building; Andrews v. Warner, 87 Tenn., 1, 9 S. W., 194. Other cases illustrating the principle are Younger v. Younger, 90 Tenn., 25, 16 S. W., 78; McNairy v. Nashville, 61 Tenn., 251; Clift v. Clift, 87 Tenn., 17, 9 S. W., 198, 360. Under all the cases cited the necessary requisite to the granting of a discretionary appeal under this clause of the statute seems to be the entry of a decree determining the principle involved as the foundation for the reference. We find no case in which the Chancellor's discretion in this regard was reversed except in the two cases above re-

ferred to in which there was no decree settling the principles involved and directing the Master as to the matters upon which he was to make his report.

This statute is a wholesome one and the courts will not defeat its purposes by placing a narrow and literal interpretation upon its terms; and we think a reference to hear proof and report as to the reasonable fees of counsel fairly comes within the clause relating to the taking and stating accounts.

■ Coming to the merits of the appeal we are of opinion that the Chancellor erred in decreeing that the extra allowance of compensation and the fees of counsel for filing the bill and impounding the assets should be taxed as costs against the defendants and paid out of the surplus funds in the hands of the Clerk and Master. The general rule on the subject is stated in 14 Am. Jur., Title "Creditors' Bills", Sec. 143, at page 738, as follows: "Allowances are made for the successful maintenance of a creditors' bill from the fund among the creditors, and not from the surplus available after payment of all debts of the defendant."

And in Corpus Juris Secundum, Vol. 21, Title "Creditors' Suits", section 83, at page 1143, as follows: "A creditor who collects funds of a debtor for the joint benefit of himself and other creditors should be allowed reasonable compensation for the services of his attorney, at least to the extent that they are beneficial. However, counsel are entitled only to their reasonable and necessary disbursements; and such allowance is not chargeable to any surplus otherwise payable to the debtor. If an allowance beyond the usual fee for counsel is proper, and it is paid out of the proceeds, it should be credited ratably on the liens, so as not to tax the debtor with it."

The cases on the subject are collected in a note in 49 A. L. R., at page 1183, where the annotator states the rule as follows: "Allowance cannot be made from surplus. Allowance of attorneys' fees to one who has maintained a successful creditors' bill for the preservation of a debtor's estate, or the recovery of property conveyed away in fraud of creditors, must be made from the fund to be distributed among the creditors, and not from the surplus which may remain after the payment of all debts".

One of the early cases on the subject in this country is Wagener v. Mars, 27 S. C., 97, 2 S. E., 844, decided in 1887, in which it was held that the attorneys for the plaintiffs in a creditors' bill to set aside a deed for fraud were entitled to a fee out of the proceeds of the sale of the land, to the extent that they might be applied to the claims of creditors who came in and shared in the results of the suit. But, where the land sold for more than enough to pay the creditors, the balance should not be diminished by any portion of the fee; in other words, that the fee should be deducted from the amount of the proceeds applied to the claims of creditors and not from the surplus belonging to the defendant.

One of the ablest and best reasoned cases on the question is Huff v. Bidwell, 5 Cir., 195 F., 430, 432, 115 C. C. A., 332, in which it was held that where the assets of an insolvent debtor were impounded under a creditors' bill filed by the complainant for his own benefit and for the benefit of all other creditors similarly situated it was proper that the fee of the complainant's solicitor should be paid out of the assets so that all of the creditors would contribute ratably to the expense of impounding the assets. But it was there pointed out that if no other creditors intervened, and the suit inured to the benefit of the

complainant alone there would be no basis for the argument that the fee of complainant's solicitor should be collected from the defendant. It was also pointed out that there existed no legal right to create at the debtor's expense a larger fund than was sufficient to pay his debts and costs, and it was said: "If it could have been known in advance that the property as advertised would produce a surplus, and it had been capable of a suitable division to avoid that result, only enough of it should have been sold to pay the debts and the costs. There would have been no authority to sell more of it for the purpose of paying the fees of complainants' solicitors."

And in Peppers v. Cauthen, 143 Ga., 229, 84 S. E., 477, 479, the court said: "The theory on which attorneys' fees for bringing a fund unto court is allowed is that if the diligence of one creditor secures a fund for the common benefit, and, if others share therein, any expense of securing it should not fall on the diligent creditor alone; that those who participate in the fund should contribute their share to the common expense, so that the fund going to the different creditors may be first taxed with the proper amount of attorneys' fees before its distribution. But this does not authorize creditors to be paid in full and also to require the debtor to pay attorneys' fees for bringing the fund into court. What is here said refers to the award of a fee from the fund for bringing it unto court, and not to the contract fees which may be contained in the notes."

And in Roller v. Paul, 106 Va., 214, at page 219, 55 S. E., 558, at page 560, the court said: "The claims asserted against William I. Paul have been so far satisfied as to leave a balance of the proceeds of his land payable to him or his assignee. The balance that is left to this debtor can hardly be appropriated to the payment of fees

to the counsel of those who have sold his land and fought for years over its proceeds. When their claims were satisfied they had secured from their debtor's property all that they were entitled to . . . ''

Other cases to the same effect are German National Insurance Co. v. State Insurance Co., 108 Va. 393, 61 S. E. 870, Citizens National Bank v. Manoni, 76 Va. 802, 808, and Miller v. Kehoe, 107 Cal. 340, 40 P. 485.

We find no Tennessee case in which the exact question we have here was passed upon, but the reasoning of our cases for paying the fee of complainant's solicitor out of the fund in creditors' suits is in line with the reasoning of the above cases, namely, that the assets of an insolvent debtor having been impounded by one creditor for the benefit of himself and all others similarly situated, it is just that all creditors should contribute ratably to the expense of impounding them. Some of these cases are Whitsett v. City Building Association, 3 Tenn. Ch. 526; Grant v. Lookout Mountain Co., 93 Tenn. 691, 28 S. W. 90, 27 L. R. A. 98; Electric Light Co. v. Bristol Gas Co., 99 Tenn. 371, 388, 42 S. W. 19; and Kelly v. Mountain City Club, 101 Tenn. 286, 47 S. W. 426.

The reasoning of the above cases seems to us to be sound and we find nothing in the facts of this case to warrant a different conclusion. There was no charge of fraud or concealment of their assets by the defendants. It was not deemed necessary to appoint a receiver to administer the assets. The defendants have co-operated in every way in disposing of their assets by private sales and we have no doubt that the fortunate result attained is due largely to their efforts in this regard. If all of the defendants' property had been administered by a receiver and sold at public sale while the country was just recovering from the greatest financial depression in its

history, as complainants' solicitors insisted should be done, it is most likely that it would have been sold at a sacrifice.

The claims filed and allowed against the estate amounted to around $100,000. Of this amount approximately $75,000 was evidenced by promissory notes which provided on their face for the payment of attorneys' fees. The fees allowed on these claims amounted to over $7,500, which have been paid; and of this sum more than $4200 has been paid to the solicitors for the complainants.

For the reasons above stated we sustain the assignments of error of the appellants and reverse the decree of the Chancellor in taxing the allowance of the $1000 as extra compensation to the Clerk and Master and the compensation of the complainants' solicitors for filing the bill and impounding the assets, against the appellants; and a decree will be entered here in accordance with the views herein expressed. If it is desired to proceed further with the reference for the purpose of ascertaining the amount of compensation to be allowed to complainants' solicitors and taxed against the creditors, the order of reference may be amended to that extent, otherwise, the order of reference will be set aside.

The costs incident to this appeal including the costs of the transcript, will be adjudged against the complainants and their sureties on the cost bond.

Reversed.

Anderson, P. J., dissents.

Baptist, J., concurs.

Anderson, Presiding Judge (dissenting).

I am of the opinion that the rule of liberal construction followed by the majority of the court is not applicable.

''The aim of the law is to allow all parties a fair opportunity to have all the errors to their prejudice re-

viewed on one appeal, and one only.'' Gibson's Suits in Chancery, Sec. 1265. In accord is the pronouncement of the Supreme Court in Hume v. Commercial Bank, 69 Tenn. 220, 223, that ''the sound and safe rule of the inferior courts, as of this court, is to have only one trial of all the questions involved in the cause.''

The statute contained in Code, section 9038 is in derogation of this wise policy and hence, in my opinion, to be strictly rather than liberally construed. Among the cases which I think impliedly support this view are Kernodle v. Tatum, 51 Tenn. 312; In re Johnson's Estate, 77 Tenn. 625; and McKinney v. Etowah, 1 Tenn. App. 13.

But in my opinion the decree appealed from in this case is not within the terms of the statute upon either a strict or a liberal construction. To be within that clause of the statute applied by the majority of the court, the decree must have both of two characteristics. It must be (1) ''determining the principles involved''; and (2) ''ordering an account''. In my opinion the decree under consideration has neither.

The determinative question is, What did the legislature mean by the quoted language? In what sense was it used? The first problem is to decide whether the ''principles involved'' means, as the majority seem to hold, any principle involved in the case generally, or, as I think, the principles involved in the stating of the account which the decree orders taken by the Master.

The other is, what is meant by ''an account'' in the phrase, ''ordering an account.''

These are questions of statutory construction to be determined according to well-established canons and without regard to the exigencies of the particular case.

Statutes are to be construed as nearly to the rule and reason of the common law as may be. Snyder v. Mc-

Ewen, 148 Tenn. 423, 256 S. W. 434. It is also an elementary rule of statutory construction that words with a fixed meaning at common law or by decisions of the courts are presumed to be used in a statute in that sense unless there is something in the context which indicates an intention to use them in a different sense. Lively v. American Zinc Co., 137 Tenn. 261, 191 S. W. 975; State v. Smith, 137 24 Tenn. 394; Apple v. Apple, 38 Tenn. 348; Scholze, 2 Tenn. App. 80.

Since the statute purports to regulate procedure in "equity causes", is to be presumed that the language employed was used in the sense commonly attributed to it in that field of jurisprudence.

I do not maintain that the clause of the statute is confined to interlocutory decrees in suits which are primarily for an accounting. Upon the contrary, I think the statute covers cases where the ordering of the account is merely incidental to the granting of other relief. But in my opinion, in its application to the latter class of cases, I think the same thing is meant by "determining the principles involved" and "ordering an account" as is true where the suit is primarily one for an accounting.

The majority of the court hold that the determination that the compensation of the Clerk and Master and that of the complainant's solicitors should be taxed as a part of the cost and paid out of the funds in the master's hands, was a determination of "the principles involved" within the meaning of the statute. I have been unable to bring myself around to this view. I do not understand that there is meant by the language, "determining the principles involved", a mere determination that one party is liable for a single specific item, the value of which is not shown; nor do I understand that there is meant the determination of just any principle or principles that may

be involved in the case. What I think is meant is the determination of the principles involved in taking the account ordered to be taken by the master; the principle by which he is to be governed in performing that duty. Thus, Mr. Gibson says, "in decreeing an account the court should settle and specify the principles on which the account is to be taken; and, when practicable, should define the powers and duties of the master, and indicate in a general way what he is required to do in each particular matter referred to him." Gibson's Suits in Chancery, Sec. 599. That section, together with the two succeeding sections and Section 1040, to my mind indicate what is understood in equity jurisprudence as settling principles upon which an account is to be taken by a master. Obviously, this is quite a different thing from just determining any issue of liability that may be involved in the case. See generally, Terrell v. Ingersoll, 78 Tenn. 77, 82; Patton v. Cone, 69 Tenn. 14.

Conceding there is ample room for the opposite view upon that phase of the matter, a more serious question, I think is whether the decree appealed from orders an "account" within the meaning of the code section. That section originated with the Acts of 1835-36, Chapter 17. At that time, as now, "accounts and accounting" was a well-known topic in the field of equity jurisprudence. It is the subject of a separate chapter in Mr. Gibson's classic work. Gibson's Suits in Chancery, sec. 952 et seq. This chapter begins with the definition of an account. This is as follows: "An account is a detailed statement of mutual demands in the nature of debits and credits between the parties arising out of contracts or some fiduciary relation." Conceding that there may be an account within the meaning of Code, section 9038 even though there be no mutual demands in the sense that there

are debits and credits against more than one party, I nevertheless think that the order of reference in this case does not call for the stating of an account. Numerous definitions of the word "account" are collected under that heading in "Words and Phrases", Vol. I, Perm. Ed., p. 523 et seq. None of these, in my opinion, warrants the interpretation given that word by the majority of the court in the present case.

Under the order of reference in the present case the master could not have made a debit or credit against or in favor of either party, much less one arising out of contract or some fiduciary relation; for there was no such relation between the defendant and the solicitor for the complainant, and had never been. In executing the order of the reference, the master will not be proceeding according to any principles determined in the decree: he will neither charge any one or credit any one; he will not report that anybody is liable to anybody else for anything. When he responds he will simply be reporting the value in dollars and cents of the services rendered by the solicitors for the complainant. In my opinion it could as well be said that a reference to hear proof and report the value of a horse for which the decree held one of the parties liable was the "ordering an account" within the meaning of the statute.

It seems to me that under the construction adopted by the majority of the court that the chancellor would have the discretion to authorize an appeal from practically any interlocutory decree in an equity cause that decided any issue in the case and ordered a reference to the clerk for a report in terms of dollars and cents. I think it an unwise policy to so extend the statute and also contrary to the spirit of the pronouncement of the Supreme Court in Employers' Indemnity Co. v. Willard, 125 Tenn.

288, 151 S. W. 1029, reiterated in Mengel Box Co. v. Lauderdale County, 144 Tenn. 266, 230 S. W. 963, that "it has uniformly been held by this court that the chancellor's discretion in allowing appeals under this section of the Code is limited to the cases therein enumerated." [125 Tenn. 288, 151 S. W. 1030.]

It is readily conceded, if my view is correct, that the situation presented affords spectacular instance of the temptation to yield to expediency; for it is true that if the conclusion reached on the merits is sound, as I think it is, the order of reference was unnecessary and the decree should have been a final one, from which an appeal would lie as a matter of right. But to be appealable as a matter of right, it is not sufficient that a decree be final in substance. It must be so in form. Cockrill v. People's Sav. Bank, 155 Tenn. 342, 347, 293 S. W. 996. And the order of reference in this case, even if it was in reality unnecessary because of the erroneous decision of the chancellor on the merits, prevented the decree from being final in form within the meaning of the applicable rule.

Without intimating that the majority of the court was in the slightest influenced by any such consideration, the fact that the allowance of the appeal, though unwarranted, would save both time and expense, is no sound reason for entertaining it. To do so, would, in my opinion, establish a dangerous precedent, the disadvantages of which would, in the long run, far outweigh any temporary benefit to the parties in this case.

With the utmost deference to the view of my colleagues, I am unable to escape the conclusion that the chancellor had no authority to grant this appeal and hence that this court has no jurisdiction of the subject matter. If wrong in this view, I am in full accord with the reasoning and conclusion on the merits of the case as set forth in the able opinion by Judge Ketchum.