**HOWARD G. LEWIS CONSTRUCTION COMPANY, INC., Plaintiff/Appellee,**

v.

**Jerry LEE, Trustee for Undisclosed Beneficiaries and Sheu Chong Lee d/b/a Jade East Restaurant, Defendant/Appellant,**

v.

**EXCHANGE MUTUAL INSURANCE COMPANY, Counter–Defendant/Appellee.**

Court of Appeals of Tennessee, Western Section, at Jackson.

Sept. 27, 1991.

Application for Permission to Appeal Denied by Supreme Court March 16, 1992.

John Michael Bailey, Memphis, for appellant.

Genevieve M. Dix, Memphis, for appellee.

Keene W. Bartley, Nashville, for counter-defendant/appellee.

TOMLIN, Presiding Judge, Western Section.

Howard G. Lewis Construction Company, Inc., (hereafter "Lewis" or "plaintiff"), filed suit in the Chancery Court of Shelby County to enforce a mechanic's and materialmen's lien against Jerry Lee, Trustee, and Sheu Chong Lee, d/b/a Jade East Restaurant, (hereafter "defendant" or "Jade East"). Lewis sought a judgment for unpaid labor and material pursuant to a construction contract with defendant in the amount of $25,664.20. Jade East filed its answer as well as a counter-claim, subsequently amended, by which it sought damages from Lewis for amounts paid by Jade East to Lewis' sub-contractors to settle claims against Jade East. In addition, Jade East sought damages for alleged deficiencies in the work Lewis performed for defendant. Jade East subsequently filed an amended complaint against Exchange Mutual Insurance Company (hereafter "Exchange Mutual") seeking recovery under a performance bond issued by Exchange Mu-

tual in favor of Lewis. The specific questions were referred to a Master, pursuant to court order.

The chancellor confirmed the Master's report. Following a bench trial, summary judgment was granted in favor of Exchange Mutual on defendant's counterclaim. The chancellor also entered judgment for plaintiff in the amount of $11,651.90 plus pre-judgment interest, post-judgment interest, and reasonable attorney fees. Following a hearing by a special chancellor, plaintiff was awarded attorney fees in the amount of $22,852.00.

Defendant raises five issues on appeal. Did the trial court err: (1) in awarding attorney fees to plaintiff; (2) in awarding pre-judgment interest to plaintiff; (3) in denying defendant the opportunity to present proof on damages concerning repairs made to the kitchen floor; (4) in confirming the Master's report notwithstanding that the Master heard evidence outside the scope of the reference; and (5) in dismissing the counter-claim against Exchange Mutual. Exchange Mutual has raised as an issue on appeal whether or not the appeal is frivolous. We reverse the trial court as to the award of attorney fees and pre-judgment interest. In all other respects we affirm.

In December, 1978, plaintiff entered into a contract with defendant for the purpose of making certain improvements on defendant's property known as the Jade East Restaurant. Exchange Mutual issued a performance bond to secure Lewis' performance in favor of Jade East. Lewis, as general contractor, and his sub-contractors undertook to do the work specified by the contract. Jade East was represented by an architect during the course of construction.

There appear to be no problems concerning payment being made from time to time during the course of the construction. Jade East occupied the building in mid-January, 1980 and opened its restaurant on January 30, 1980. Lewis thereafter submitted a written request for final payment, which was refused by Jade East. In July, 1980 Lewis instigated this suit by filing a "Complaint to Enforce Mechanic's and Materialmen's Lien, and for Attachment."

Plaintiff's complaint against defendant alleged in essence that defendant was the owner of certain real property in Memphis, that it entered into a contract with plaintiff for the construction of certain improvements on the property, and that plaintiff, as general contractor, furnished labor and materials for the erection of the building specified. The complaint further alleged that plaintiff was not paid for labor and material and that defendant was liable to plaintiff for the amount stated. Plaintiff stated that a notice of lien had been timely filed against the property, a lien was claimed, and that the property should be attached to satisfy the lien and defendant's obligation to plaintiff.

Jade East's answer contained its initial counter-claim against Lewis which alleged that three of Lewis' sub-contractors had not been paid for work done on the Jade East job. It was contended that those sub-contractors filed suits to enforce their mechanic's and materialmen's lien. Those suits resulted in payments to them in excess of $19,000 to settle their claims, and this sum was credited on Lewis' account with the sub-contractors. Jade East demanded judgment against Lewis for that sum.

In its answer to the counter-claim Lewis denied fault insofar as the sub-contractors were concerned. Rather, Lewis asserted that the sub-contractors had not performed their work completely or properly pursuant to the contract, and that defendant elected to pay and release them, leaving Lewis with no effective recourse against them.

In Jade East's amendment to its counter-claim, it asserted many deficiencies in the performance of the construction contract by Lewis, maintaining that those imperfections were never corrected or completed, and that the deficiencies constituted damages for which they were entitled to compensation from Lewis. These new allegations were, of course, denied by Lewis.

Defendant filed a motion to have the chancellor submit the issues of damages and the question of whether or not Lewis

complied with the contract's specifications to the Clerk and Master. Although opposed by Lewis, an order of reference was entered. The order provided that the Master was directed to hear proof and report to the court as follows:

1. What deficiences [sic], if any, there are in the work performed with respect to the contract specifications.

2. Whether the Cross–Plaintiff is entitled to have these deficiences [sic] corrected under the terms of the contract.

3. What damages have resulted, if any, as a result of any deficiences [sic] in the job.

All other matters are reserved until the incoming of the Master's report.

A hearing or hearings were held by the Master pursuant to the order of reference. However, there is no transcript of such a hearing or hearings in this record. The crux of the Master's report is as follows:

QUERY 1:

What deficiencies, if any, are there in the work performed with respect to the contract specifications.

FINDING 1:

During the course of the hearing, the defendant waived some of the minor defects as contained in earlier punch lists. The major deficiencies were: kitchen floor, roof, and parking lot.

The Master finds that the parking lot was not laid according to specifications; that the kitchen floor did not drain properly; and that the roof did not drain properly. The Master finds that the negotiations of the parties relative to the kitchen ventilation systems has relieved the contractor of any liability for faulty design, installation or substitution of the system specified in the plans. (Ref.Ex. 43).

QUERY 2:

Whether the Cross–Plaintiff is entitled to have these deficiencies corrected under the terms of the contract.

FINDING 2:

The Master finds that the Cross–Plaintiffs are entitled to have the deficiencies corrected.

QUERY 3:

What damages have resulted, if any, as a result of any deficiencies in the job.

FINDING 3:

The Master finds that the cost to repair the entire parking area to be $13,012.30, which consists only of a 2″ overlay on the existing asphalt. The Master finds that the crumbled areas around the dempster-dumpster were improperly designed to withstand the weight and agitating actions of the dumpster truck, therefore were not the fault of the contractor (Ref.Ex. 31).

The Master finds that in the kitchen area the floor was improperly sloped causing the water to puddle rather than to flow toward the floor drains. However, the proof presented showed only the cost of replacing the entire floor and not the cost of correcting the deficiency. Since the defendant failed to carry his burden of proof, the Master finds that the defendant is not entitled to any damages for the kitchen floor problems. (Ref.Ex. 46).

The Master finds that the cost of repairing the roof is $1,000.00 as a total re-roofing is unnecessary.

Lewis excepted to the Master's report. Subsequently, the Master filed a supplemental report for the expressed purpose of clarifying the following statement in Finding 1 contained in the initial report:

The Master finds that the negotiations of the parties relative to the kitchen ventilation systems has relieved the contractor of any liability for faulty design, installation or substitution of the system specified in the plans (Ref.Ex. 43).

The Master's supplemental report read in pertinent part as follows:

The Master finds that the Defendant's architect approved the substitution of the ventilation system installed rather than the system specified in the plans and specifications. The Settlement Agreement (Ref.Ex. 43) entered into by Jerry Lee, Chew [sic] Chong Lee, James Watson d/b/a Watson Heating and Air Conditioning Co. and Noland Co. in the fourth paragraph states that "a dispute

has arisen involving the parties concerning the operation of the air conditioning and vent-a-hood system ..." and in the sixth paragraph "the parties are desirous of settling all controversies which have arisen among them...." The Master finds that this Settlement Agreement between the furnisher and installer of the system and the owner of the property settles any dispute between the owner and the contractor as to damages relative to the ventilation system because the contractor would be precluded from seeking contribution from the furnisher and the installer of the venitlation [sic] system because of the Settlement Agreement.

Jade East then filed its exception to the supplemental report of the Master contending that the portion of the first finding elaborated upon by the Master in the supplemental report in essence was beyond the scope of the order of reference which Jade East contends related only to alleged deficiencies in Lewis' work and the damages resulting therefrom.

At the hearing before the chancellor to consider exceptions filed by both parties to the Master's report and supplemental report, Jade East, through its counsel, moved to be allowed to present additional proof at trial regarding the cost of repair to the kitchen floor. That motion was denied. Exceptions to both the original and supplemental report of the Master were overruled and the reports confirmed. The court found that this issue was within the scope of the Master's authority and such proof should have been put on at the hearing held before him.

Following a bench trial, the chancellor granted Exchange Mutual's motion for summary judgment and dismissed it as a counter-defendant. In addition, the court held that Jade East was entitled to the offsets as found by the Master and that they were taken into consideration by the court. The court awarded Lewis a judgment against Jade East in the amount of $11,651.90. In addition, pre-judgment interest at the rate of ten percent per annum running from January 30, 1980, the date

that Jade East opened for business, was allowed, along with post-judgment interest and reasonable attorney fees. The order provided that a special hearing would be had to determine the amount of the attorney fee award. The defendant's property upon which Lewis had perfected a lien was ordered to be sold and the proceeds to be applied in satisfaction of the judgment.

Lewis' counsel filed a motion for a special hearing to consider her application for attorney fees. Jade East filed its response, contending that the contract between the parties contained no provision for the award of attorney fees in the event of a contract dispute, and that there was no other basis in law for the awarding of attorney fees. The Clerk and Master, sitting as special chancellor, awarded attorney fees to plaintiff's attorney in the amount of $22,852.00. His order in part read as follows:

This cause came on to be heard this 27th day of April, 1990, upon statements of Counsel and from the entire record in this cause, from all of which the Court finds as a matter of fact and concludes as a matter of law that this matter is in the nature of a general lienor's bill. The Court further finds that the case of *Tennessee United Paint Store v. Overmyer,* 467 SW2d 806, is controlling in this matter and that Ms. Genevieve Dix, as Attorney for the Plaintiff, Howard G. Lewis Construction Company, Inc., should be awarded attorney's fees in the sum of TWENTY TWO THOUSAND, EIGHT HUNDRED FIFTY TWO DOLLARS AND NO/100 ($22,852.00)....

## I. ALLOWANCE OF ATTORNEY FEES

The Clerk and Master, sitting as special chancellor, reaffirmed that the suit brought by Lewis was in fact and law in the nature of a general lienor's bill and awarded the full amount of attorney fees sought by Lewis' attorney.

■ It is a general rule in this state, as well as in this country, that litigants must pay their own attorney fees. *See Alyeska Pipeline Service Co. v. Wilderness Society,* 421 U.S. 240, 95 S.Ct. 1612, 44 L.Ed.2d 141 (1975); *Carter v. Virginia Surety Co.,*

187 Tenn. 595, 216 S.W.2d 324 (1948). In *Goings v. Aetna Casualty & Surety Co.*, 491 S.W.2d 847 (Tenn.App.1972), this Court held that in the absence of a statutory provision therefor or a contractual agreement between the parties, the attorney fee incurred by a plaintiff in recovering a judgment for damages is not a proper element of damages, and the allowance of same is contrary to the public policy of Tennessee. *See also John J. Heirigs Construction Co. v. Exide*, 709 S.W.2d 604 (Tenn.App.1986).

In awarding the attorney fee for Lewis' counsel, the special chancellor stated that "The Court further finds that the case of *Tennessee United Paint Store, Inc. v. Overmyer Whse. Co.*, 467 S.W.2d 806 (1971) is controlling in this matter...." It is readily apparent that the special chancellor was of the opinion that not only was the case *sub judice* in the nature of a general lienor's suit, but also, that it created a general fund from which the award of attorney fees could be made.

This Court is of the opinion that the trial court's reliance upon *United Paint* is misplaced for at least two reasons. In *United Paint*, several claimants filed materialmen's liens against defendant's property. Plaintiffs' suit was sustained as being one in the nature of a general creditor's bill for the benefit of all lienors. Plaintiffs alleged that they were entitled to attorney fees. In awarding fees, the Court stated:

> We recognize, as insisted by the defendant, the established case law of this state is to the effect a complainant who files a bill in the nature of a general creditor's bill is not entitled to attorneys' fees unless the action creates or preserves some fund or assets for the benefit of creditors.
>
> It is also established the attorneys' fees thus allowed must come from the fund or assets thus preserved for the creditors, and cannot come from any surplus over and above the amount necessary to satisfy the claims of creditors. *Moore v. Churchwell* (1944) 27 Tenn. App. 443, 181 S.W.2d 959.

*United Paint* at 809.

In *Moore v. Churchwell*, 27 Tenn. App. 443, 181 S.W.2d 959 (1944), relied upon by the Court in *United Paint*, the source of the common fund from which attorney fees could be allowed was delineated as follows:

> [T]he Chancellor erred in decreeing that the extra allowance of compensation and the fees of counsel for filing the bill and impounding the assets should be taxed as costs against the defendants and paid out of the surplus funds in the hands of the Clerk and Master. The general rule on the subject is stated in 14 Am.Jur., Title "Creditors' Bills", Sec. 143, at page 738, as follows: "Allowances are made for the successful maintenance of a creditors' [sic (creditor's)] bill from the fund among the creditors, and not from the surplus available after payment of all debts of the defendant".

*Id.* 181 S.W.2d at 962. Thus, following *United Paint*, as a result of a general creditor's bill, the compensation of attorneys must only be had from the funds "created" by the bill (i.e., the judgment).

This Court is of the opinion that both the chancellor and the special chancellor were in error in finding that Lewis' suit was one in the nature of a general lienor's or a general creditor's bill. A reading of Lewis' complaint clearly indicates that it is a suit filed on behalf of Lewis, individually, seeking damages for alleged breach of contract, with any judgment thereby obtained to be secured by a lien upon the property. Nowhere in the complaint is it mentioned that the suit was being commenced on behalf or for the benefit of other actual or potential lienholders.

The record reflects tangentially that certain subcontractors had at some point in time filed suit to enforce liens against the property. However, there is nothing in this record to indicate that Lewis sought to consolidate the other suits with his, as required by T.C.A. § 66-11-132.

In *United Paint* it is apparent that the Court specifically recognized the existence of other pending suits, inasmuch as the defendant in that case was ordered to deposit the settlement proceeds with the

court or escrow agent. If he failed to do so, he would bear responsibility for up to fifteen percent of any amounts paid without a deposit in an effort to prevent the dissipation of the fund from which an award of attorney fees might be made. There was no such proceeding here. Inasmuch as we find that the suit by plaintiff is not one in the nature of a general lienor's bill, we are compelled to hold that there is no justification for the award of attorney fees. In passing we should note that *United Paint* also stands for the proposition that any attorney fees must be paid out of the "fund preserved" (the judgment). In the case under consideration, the attorney fees awarded are almost double the amount of plaintiff's judgment.

## II. PRE–JUDGMENT INTEREST

Jade East contends that the chancellor erred in awarding pre-judgment interest from and after January 30, 1980, the date that Jade East began operating a restaurant on the premises. T.C.A. § 47–14–123 provides in part that "Pre-judgment interest, i.e., interest as an element of, or in the nature of, damages, ... may be awarded by courts or juries in accordance with the principles of equity at any rate not in excess of a maximum effective rate of ten percent (10%) per annum...."

In awarding Lewis pre-judgment interest from January 30, 1980 to the date of judgment, the chancellor stated:

> Pre-judgment interest is discretionary with the court, and since Jade East had been occupying this rather expensive property for years and had been depreciating them [sic (it)] as an item of expense for the Internal Revenue Service purposes, the Court was of the opinion that it was a proper case for prejudgment interest.

■ Pre-judgment interest is not allowed as a matter of right in Tennessee on unliquidated claims for damages. The allowance of interest is in the discretion of the court. *B.F. Myers & Son of Goodlettsville, Inc. v. Evans*, 612 S.W.2d 912 (Tenn. App.1980).

In at least two breach-of-contract cases involving construction, this Court has considered the award of pre-judgment interest to be discretionary and has upheld the trial court in declining to award such interest. *See F.T. Thayer, Jr. v. The Wright Co.*, 362 S.W.2d 805 (Tenn.App.1961); *Foster & Creighton Co. v. Wilson Contracting Co.*, 579 S.W.2d 422 (Tenn.App.1978).

■ This Court is of the opinion that the factors mentioned by the chancellor to the effect that defendant occupied this restaurant over a period of years following the work by plaintiff and that Jade East had depreciated the building each year on its income tax returns (as it had a right to do) are not relevant. What is material to this Court is the fact that Lewis sued for in excess of $25,000 and recovered a judgment slightly in excess of $11,000, the difference being brought about by setoffs pled by Jade East. In light of the substantial controversy over the amount due Lewis, this Court is of the opinion that the chancellor abused his discretion in awarding pre-judgment interest.

## III. DENIAL OF PROOF OF REPAIRS TO FLOORING

■ Following the hearing before the Master pursuant to the order of reference, the Master filed his report. The first inquiry the Master was directed to make was "What deficiencies, if any, are there in the work performed with respect to the contract specifications." The Master found that one of the major deficiencies was the improper water drainage of the kitchen floor.

However, the Master further found that Jade East presented proof concerning the cost of replacing the entire floor only. There was no proof of the cost for repairing the floor to correct the defects. As a result of this misdirection of proof, the Master concluded that Jade East failed to carry its burden of proof and thus was entitled to no damages pertaining to the kitchen floor problem.

The court's Findings of Fact, Conclusions of Law and Opinion stated the following:

It is contended that the court erred in confirming the Master's report. It was contended that the floor is the subject of this dispute and was improperly sloped, causing the water to puddle rather than flow toward the floor drains. Proof was presented upon the cost of replacing the entire floor, and not the cost of correcting the deficiency. The Master's report specifically noted that Jade East had failed to carry its burden of proof and could not be awarded damages for the kitchen floor. Apparently, Jade East was so anxious to obtain an entire new kitchen floor that they concentrated upon proving the damages for this and not the damages for repairs. Jade East had a proper pre-trial opportunity to be heard on this question when the court heard and ruled on the objections to the Master's report. The court confirmed the report, and no appeal was taken by Jade East, so the Master's and the court's findings are, in the opinion of this court, proper.

Jade East contends that it should have been allowed to present proof at trial concerning the cost of repairing the kitchen floor. The chancellor refused, stating that it was the purpose of the hearing before the Master to hear proof concerning items such as this, and that failure to put on the proper proof at that time could not be remedied. The court also noted that there was no appeal taken from the action of the chancellor in confirming the Master's report.

Yet another defect in this regard is that once the court ruled that Jade East could not put on proof concerning the cost of repairing the kitchen floor, thereafter there was no proffer of proof for the record so that the matter could be adequately reviewed on appeal. We therefore hold that this failure constituted a waiver by Jade East. This issue is without merit.

## IV. THE MASTER'S REPORT—OUTSIDE THE SCOPE OF REFERENCE

Jade East contends that the trial court erred in confirming the Master's report that included matters defendant considered to be outside the scope of the reference to the Master.

The Master was directed to hear proof and report to the court as to the following:

1. What deficiences [sic], if any, there are in the work performed with respect to the contract specifications.

2. Whether the Cross–Plaintiff is entitled to have these deficiences [sic] corrected under the terms of the contract.

3. What damages have resulted, if any, as a result of any deficiences [sic] in the job.

The order of reference provided that all other matters were "reserved until the incoming of the Master's report."

As part of his report, under Finding 1, following Query 1, the Master stated:

The Master finds that the negotiations of the parties relative to the kitchen ventilation systems has relieved the contractor of any liability for faulty design, installation or substitution of the system specified in the plans.

The Master filed a Supplemental Report approximately three months following his initial report for the purpose of clarifying his previous finding. The Supplemental Report reads in part as follows:

The Master finds that the Defendant's architect approved the substitution of the ventilation system installed rather than the system [sic] specified in the plans and specifications. The Settlement Agreement ... entered into by Jerry Lee, Chew [sic] Chong Lee, James Watson d/b/a Watson Heating and Air Conditioning Co. and Noland Co. in the fourth paragraph states that "a dispute has arisen involving the parties concerning the operation of the air conditioning and vent-a-hood systems ..." and in the sixth paragraph "the parties are desirous of settling all controversies which have arisen among them...." The Master finds that this Settlement Agreement between the furnisher and installer of the system and the owner of the property settles any dispute between the owner and the contractor as to damages relative to the ventilation system because the contractor would be precluded from seek-

ing contribution from the furnisher and installer of the venitlation [sic] system because of the Settlement Agreement.

While Lewis filed exceptions to the Master's report within ten days thereof, no exceptions to the report were filed by Jade East. However, following the filing of the supplemental report by the Master, Jade East timely filed its exceptions to it. In these exceptions Jade East noted that the order of reference directed the Master to determine only the existence of deficiencies, if any, and how they were to be remedied, or how defendant was to be compensated therefor. Defendant took the position that the Master had ruled on a matter of law in ruling on the settlement agreement between Jade East and the HVAC sub-contractor, and that this was outside the scope of the reference.

At a subsequent hearing before the chancellor, both the report and the supplemental report of the Master were confirmed. No further challenge was made by defendant to this Order until trial.

At trial, counsel for defendant sought to put on proof concerning the setoffs claimed by defendant for alleged payments to certain of Lewis' sub-contractors. At that time the court declined to permit that proof to be offered. The court stated that all questions regarding damages resulting from deficiencies or any other problems concerning job performance should have been disposed of in the order of reference. By his failure to do so, defendant waived consideration of those deficiencies.

The record in the case before us reflects that the hearing before the Master took place over a period of five days. There was no court reporter present; hence, there is no record of what transpired before the Master.

However, there is in the record a statement by counsel for Lewis that she did in fact write a letter dated February 13, 1985, to counsel for Jade East and that letter appears in this record. It reads as follows:

Re: Howard G. Lewis Construction Co.,
  Inc. vs. Jade East;
  Number: 87138–2;

Special Reference Hearing to Chancery Masters.

Dear Barry:

Special Master Arnold Lindseth has reset the hearing on the above case until March 20, 21, 1nd 22.

Barry Kuhn will put on proof of the defendant first as to their offsets and damages claimed in their answer and counter-complaint. The proof of plaintiff which refutes these claims will follow.

Counsel for Lewis then stated to the chancellor in open court, in the presence of defendant's counsel, that prior to writing this letter she and Jade East's counsel had a conversation and reached an agreement regarding the order of reference as memorialized in the February 13, 1985 letter. She stated further that counsel made no objection at any time. This Court notes that following this representation to the court, counsel for Jade East said nothing to counteract or refute this statement.

Lewis' counsel further stated that certain documents concerning the settlement with Knox, Noland and Watson were introduced into evidence before the Master and admitted into evidence.

Following the conclusion of the hearings before the Master and before the Master made his initial report of July 28, 1986, counsel for defendant wrote a letter dated May 8, 1985 to the Reference Master, which reads in part as follows:

Re: Howard Lewis Construction Co. vs.
  Jerry Lee, et al

Dear Arnold:

This is my Memorandum in lieu of final argument in this matter.

With regard to the HVAC system, I would request that you make a determination of damages with regard to that. The position of the Plaintiff/counterdefendant as I understand it is that any liability of his with regard to that is barred because of certain releases which were signed by principals of the Jade East Restaurant to the heating and air conditioning and veniliation [sic] subcontractors. The Chancellor will determine the effect of those agreements. If he rules that they do not bar recovery by

the counterplaintiff, Jerry Lee, against the counterdefendant, Howard Lewis Construction Co. and Exchange Mutual Insurance Company, then it will be necessary to make a determination of damages then. It would probably be the better course to go ahead and do that now while the evidence is fresh. Also a contrary ruling by the Chancellor may necessitate an appeal which might bring the matter back for a determination of damages. For these reasons, I think it would be the best course for everyone to make that determination regarding damages now.

In addition, this record reflects, as previously noted, that defendant filed no objections whatsoever to the scope of the Master's initial report nor to any of the evidence presented therein. Furthermore, when defendant filed its objections to the supplemental report of the Master, he did not object to the Settlement Agreements having been admitted into evidence at the hearing before the Master.

Under all the circumstances, this Court is constrained to hold that whatever objections defendant now has as to the scope of the reference were waived in the scenario set forth above. Accordingly, we find that this issue is without merit.

## V. DISMISSAL OF THE SUIT AGAINST THE SURETY

At the conclusion of the proof at the trial below, the chancellor granted the motion for summary judgment of Lewis' surety, Exchange Mutual, as counter-defendant, in the action brought by Jade East. It is contended by Jade East that this was error on the part of the chancellor.

██ The record reflects that with Lewis as principal, Exchange Mutual issued a performance payment bond on the subject project as surety. The bond contained a contractual provision to the effect that all suits under the bond were to be instituted prior to the expiration of two years from the date on which the final payment under the contract fell due.

The Final Payment of the AIA Standard Form Agreement between Jade East and Lewis read as follows:

Final payment, constituting the entire unpaid balance of the Contract Sum, shall be paid by the Owner to the Contractor 30 days after Substantial Completion of the Work unless otherwise stipulated in the Certificate of Substantial Completion, provided the Work has been completed, the Contract fully performed, and a final Certificate for Payment has been issued by the Architect.

Both the Special Master and the Court made a determination that the project was substantially complete on or about January 30, 1980. The suit of Jade East against Exchange Mutual under this bond was filed on January 10, 1983. In granting summary judgment, the trial court found that the two-year limitation period in the bond barred the suit.

*Construction and Design Law* (1991), states the following concerning substantial completion:

Substantial completion occurs when the owner can use the building for its intended use. If the owner can use the building for its intended use, then any defects in the construction are usually held not to be material. As a result, a contractor who has achieved substantial completion has also probably achieved substantial performance.

The definition of substantial completion may differ depending on the terms of the contract and the jurisdiction. The most popular definition, and the one used in the AIA documents, is that construction is substantially complete when the owner can occupy it or use it for the purpose for which it was intended....

*Id.* at § 18.1b.

██ Inasmuch as this case was tried below without the intervention of a jury, our scope of review is *de novo* upon the record, with a presumption of correctness as to findings of the trial court. Absent an error of law, unless the evidence preponderates against those findings, we must affirm. Rule 13(d) T.R.A.P. After a careful review of the evidence as to this issue,

this Court is of the opinion that the evidence does not preponderate against this particular finding. Accordingly, we hold that this issue is without merit.

## VI. FRIVOLOUS APPEAL

Exchange Mutual contends that Jade East's appeal of the action of the trial court in granting summary judgment for exchange Mutual is frivolous. Although this is a close question in this case, we decline to find this appeal frivolous.

Except as to those issues which we have reversed, the decree of the chancellor is in all other respects affirmed. Costs in this cause are taxed one-half to Lewis and one-half to Jade East, for which execution may issue if necessary.

CRAWFORD and HIGHERS, JJ., concur.