**IN THE COURT OF APPEALS OF TENNESSEE, WESTERN SECTION
AT KNOXVILLE**
_____

**FILED**

April 4, 1996

**Cecil Crowson, Jr.**
Appellate Court Clerk

|  |  |  |
|---|---|---|
| **CAROL LOUISE KEPLER,** | ) | Knox County Fourth Circuit Court |
|  | ) | No. 64111 |
| Plaintiff/Appellee. | ) |  |
|  | ) |  |
| VS. | ) | C. A. No.03A01-9508-CV-00248 |
|  | ) |  |
| **SCOTT JAMES KEPLER,** | ) |  |
|  | ) |  |
| Defendant/Appellant. | ) |  |
|  | ) |  |

_____

From the Circuit Court of Knox County at Knoxville.
**Honorable Bill Swann, Judge**

**Sarah Swanson Higgins**,
ESHBAUGH, SIMPSON AND VARNER, Knoxville, Tennessee
Attorney for Defendant/Appellant.

**Jerrold L. Becker**,
**Samuel W. Brown**,
LOCKRIDGE, BECKER & VALONE, P.C., Knoxville, Tennessee
Attorney for Plaintiff/Appellee.

OPINION FILED:

**AFFIRMED AND REMANDED**

**FARMER, J.**

**CRAWFORD, P.J., W.S.** : (Concurs)
**HIGHERS, J.** : (Concurs)

This divorce litigation involves the dissolution of the twenty-one year marriage between Appellant, Scott James Kepler (Husband) and Appellee, Carol Louise Kepler (Wife). Their union produced two children, ages 17 and 14 at the time of trial. The final divorce decree granted an absolute divorce and custody of the children to Wife. Husband now appeals from the decree, challenging the trial court's valuation of the marital residence, award of rehabilitative alimony and attorney's fees to Wife and failure to establish an "ascertainable standard" by which to measure Wife's progress towards completion of her educational goals. For reasons to be discussed, we affirm the trial court.

Husband states the issues on appeal as follows:

I. Did the trial court err in [its] valuation of the marital residence and the amount of equity contained therein?

II. Did the trial court err in the amount and duration of alimony required to be paid by the Appellant to the Appellee given the disproportionally large amount of marital debt awarded to the Appellant, his substantial child support obligation, the significant amount of marital assets awarded to the Appellee and the Appellee's voluntary unemployment?

III. Did the trial court err in order[ing] the Appellant to pay ninety percent (90%) of the Appellee's $4,815.25 attorney fees given the extent of the marital debt and alimony the Appellant was ordered to pay for the benefit of the Appellee and the substantial monetary assets awarded to the Appellee?

IV. Did the trial court err in failing to set an ascertainable standard by which the Appellee's progress towards completion of her educational goals can be measured?

Husband's first issue concerns the trial court's valuation of the marital residence and the amount of equity therein. The court valued the residence at $180,000 with an equity of $68,000, which was divided equally between the parties. The trial court heard from both parties regarding the home's value. Wife testified as follows:

Q.       .... Your house at Chevy Lane . . . you have been living there for six years; is that correct?

A.       Yes.

Q.       You have an opportunity -- this

is the Lovell Hills area?

> A.      Yes, it is.

> Q.      I want you to assume a willing buyer and a willing seller, neither under the compulsion to buy or sell, based upon your knowledge of the house and knowledge of the neighborhood, do you have an opinion as to what the fair-market value of that house is?

> A.      As far as I know, I know our neighbors sold their house a few years back, maybe two years ago for $176,000, I think, and our house has a little more square footage, so I am assuming it would be $180,000, $182,000 maybe.

> . . . .

> Q.      And so as of the time of the Rule 10, your statement is that the equity in the house was $68,000; is that correct?

> A.      Yes, it is.

Husband testified:

> Q.      Have you looked into the value of the homes in the Lovell Hills area in which the marital residence is?

> A.      Yes, I have.

> Q.      And given a fair-market value, again, as Mr. Becker said to your wife, a willing buyer, a willing seller neither under any compulsion to buy or sell, what would be your estimation of fair-market value of the house?

> A.      Well, based on the transactions that I have seen have happened in the area -- in fact, there is one listing that is in the paper yesterday -- the houses in that development are essentially the same, and that house sold for $227,000. You know, I've estimated this at $200,000, and I think that is very reasonable.

No other testimony on the issue was presented.

It is Husband's position that the trial court erred in choosing Wife's valuation, who "merely guessed," over Husband's valuation which was based on his examination of the selling prices of comparable homes in the neighborhood and calculated in a "business-like method." Husband asserts that the preponderance of the evidence reveals the home's proper valuation at $200,000 and that the trial court's finding otherwise effectively awards Wife an additional $20,000.

3

The trial court's findings of fact come to this Court with a presumption of correctness and we are to affirm, absent an error of law, unless the evidence preponderates against those findings. Rule 13(d) T.R.A.P.; *See e.g.*, *Howard G. Lewis Constr. Co. v. Lee*, 830 S.W.2d 60, 69 (Tenn. App. 1991). The trial court, when presented with these conflicting testimonies, chose to resolve such in favor of the wife. Clearly there was evidence before the trial court on which to base such a finding. Furthermore, the record does not support Husband's assertion that Wife's valuation was mere guess work. According to her testimony, which the trial court accredited, it was based on her knowledge of the sales price of her neighbor's home, with a little less square footage. In this respect, Husband's opinion is no different as his valuation was based on the sale of a comparable home in the area. We cannot say that the evidence preponderates against the trial court's findings in this regard. Husband's first issue is without merit.

Husband's next issue concerns the trial court's award of rehabilitative alimony to Wife. He does not dispute Wife's need for support, but only questions the amount and duration of the award. At the time of trial, Wife was 43 years old and Husband, 44. Wife's testimony reveals that during the marriage, she was the primary caretaker of the children and household; she did not work outside the home except for a brief period when she did some clerical work part-time. Wife began attending college in September 1993 prior to the couple's separation. She is currently working towards an associate degree in nursing and would like to continue her studies to become a registered nurse. She estimated a total of four years to obtain her nursing degree; however, she must first complete some developmental courses that she began taking her first year. She currently takes two courses per semester but would like to increase to three. She listed her monthly expenses at approximately $4,000.

Wife stated a need for rehabilitative alimony "for [her] education and also to support her eldest daughter, soon graduating from high school and desiring to attend college." Wife stated that she could work for minimum wage, but did not think "it would be worth it." Moreover, she stated that she did not have the time to work, especially when increasing her class load. She believes she can obtain her associates degree in another year and a half.

4

Husband currently works, as he did throughout the marriage, as a nuclear engineer. He earns $90,000 annually, with a net monthly income of approximately $5,600. He listed his monthly expenses at approximately $6,600. He testified that he has been financially assisted by his parents to account for the difference. Husband plans to assist both children with their college educations. Husband admitted Wife was the primary care giver of the children during the marriage.

The trial court awarded rehabilitative alimony as follows:

> (a) For so long as [Wife] continues her college education in a continuous orderly manner, and for a total period of five (5) years, [Wife] shall receive the amount of Two Thousand Five Hundred ($2,500) Dollars per month for a period of thirty-six (36) months on or before the first day of each month. Thereafter, [Wife] shall receive support during the fourth year in the sum of Two Thousand ($2,000) Dollars per month for 12 months; and during the fifth year, [Wife] shall receive the sum of One Thousand Five Hundred ($1,500) Dollars per month for 12 months.

> (b) In the event that [Wife] no longer pursues her college education in a continuous, orderly manner at any time during the first thirty-six (36) months of her receiving rehabilitative alimony, then the amount of [Husband's] obligation will be reduced to the sum of Two Thousand ($2,000) Dollars per month for the next twelve (12) months; and thereafter reduced to the sum of One Thousand Five Hundred ($1,500) Dollars per month for the next twelve (12) months until the [Husband's] two (2) year support obligation has expired.

Husband contends that in making the award, the trial court failed to appropriately consider the two most important factors in granting an award of alimony: need and the ability to pay. He states that the trial judge failed to consider Wife's ability to support herself and Husband's inability in light of the marital debt and assets awarded him.

In making the award, the trial court expressly found Wife's plan for her education "sound," while acknowledging that such a "heavy" request would "place quite a crimp on the husband for three years, of $2,500 per year spousal support for 36 months." The court continued:

> The spousal support is rehabilitative. It will come to an end. It does not last forever. It will be a heavy burden for the husband in the short-term. Twelve factors are given judges to consider. The Court has considered all 12 but in particular factors

> one, two, three, six, seven, eight, nine, and 11, . . . . The relative earning capacity far disparate favoring the husband; the needs of the parties far disparate the wife has more. She has the children after all. She has the need for the education. The relative education is far disparate. It is a long marriage. It is undesirable for the wife to seek minimum-wage employment outside the home while studying and while providing the hands-on care for her two daughters.
>
> The separate assets are not significant. We consider, of course, what was done . . . under equitable distribution. We consider the fact the parties had a comfortable standard of living in the same -- to the extent possible should be continued. We consider to some extent relative fault in this stipulated divorce.

As to the marital property division, the trial court divided equally between the parties certain pension and retirement accounts, totaling approximately $148,000.[1] The couple's savings account of approximately $1,500 and certain shares of stock, valued by the parties between $4,000 and $13,000, were also divided equally. As to marital debt, Husband was ordered to pay certain credit card accounts totaling approximately $5,000. The parties were equally responsible for another Visa account totaling approximately $6,000, according to Husband. Wife was held solely responsible for the mortgage on the marital home, a $300 Service Merchandise debt and a $450 veterinarian bill. Wife was also responsible for the $10,000 note on the vehicle she was awarded as her separate property.

Husband is correct that need and ability to pay are the cornerstones for making an award of alimony. *See e.g., Loyd v. Loyd*, 860 S.W.2d 409, 412 (Tenn. App. 1993). The record certainly establishes Wife's need, which as heretofore noted, is not denied by Husband. The duration of the award as determined by the trial court necessarily takes into account the time frame for Wife to obtain her educational degree. We do not find the length of the award inappropriate or an abuse of the trial court's discretion. As to the amount, we agree with the trial court that for a while Husband will be heavily burdened. However, considering Husband's annual salary and present earning capacity, plus the amount of marital assets (and debt) awarded him, as well as all other relevant factors, we cannot say it is too heavy a load to bear for the short term. We also note that the

---

[1]Husband's award of one-half equity in the marital home included interest thereon. The court delayed payment by Wife for 36 months, treating such as an incident of rehabilitative alimony.

6

couple's eldest child reached the age of majority in December 1994 and thus, Husband's child support obligation should be reduced accordingly. We find no error in the trial court's award of rehabilitative alimony, neither as to amount or duration.

Husband next questions the trial court's award to Wife of ninety percent (90%) of her attorney's fees, or $4,333.73. The trial court's judgment allows Husband to pay such amount in monthly increments of no less than $100. The awarding of attorney's fees is within the sound discretion of the trial court. *Loyd*, 860 S.W.2d at 413. In making its decision, the trial court considered, *inter alia*, the parties' statements of liquid assets. These reveal that Husband has approximately $3,200 more in liquid assets. This coupled with the foregoing facts outlined above, leads us to conclude that the trial court did not abuse its discretion in awarding ninety percent (90%) of Wife's attorney's fees as additional alimony.

Husband's final issue concerns the trial court's alleged error in failing to establish an "ascertainable standard" by which Wife's progression toward her educational degree can be measured. Husband argues that the trial court failed to define the phrase "orderly manner" and contends that it can be argued that Wife's current class load of one or two courses per semester does not constitute an orderly progression towards graduation. The record does not indicate that Husband moved the court to amend the judgment. Rule 59.04 T.R.C.P. We, therefore, consider this issue waived. Further, counsel advised this Court at oral argument that there is pending in the trial court a petition filed by Husband to modify alimony.

It accordingly results that the judgment of the trial court is affirmed and this cause remanded for any further proceedings necessary and consistent with this opinion. Costs are taxed to

7

Scott James Kepler, for which execution may issue if necessary.

_____
FARMER, J.

_____
CRAWFORD, P.J., W.S. (Concurs)

_____
HIGHERS, J. (Concurs)_